PAUL A. FRASSETTO (SBN 114802)
FRASSETTO LAW OFFICES
455 Market Street, Suite 2220
San Francisco, California  94105
Telephone: (415) 354-2700
Facsimile: (415) 354-2719

Attorney for Appellants
RICHARD K. SHULTZE, LORENZO V. ZUNINO,
ROBERT BECCHETTI and RICHARD QUESTONI

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD K. SCHULTZE; LORENZO V. ZUNINO; ROBERT BECCHETTI; and RICHARD QUESTONI,<br><br>    Appellants,<br>    vs.<br><br>DAVID N. CHANDLER, SR.; and DAVID N. CHANDLER, P.C.,<br>    Appellees. | Case No. CV-11-4940 WHA<br>(Chapter 11)<br><br><br>A. P. No. 11-1118 |

## APPELLANTS' OPENING BRIEF

PAUL A. FRASSETTO
Attorney for Appellants
RICHARD K. SHULTZE, LORENZO V. ZUNINO,
ROBERT BECCHETTI and RICHARD QUESTONI

1

2

# **TABLE OF CONTENTS**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

I.  FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  The Colusa Mushroom Bankruptcy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.  The Legal Malpractice Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  CHANDLER Removes the Legal Malpractice Complaint . . . . . . . . . . . . . . . . . 16

    D.  Chandler's Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.  The Settlement with Premier . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A.  The Bankruptcy Court was Obligated to Remand the Case to
        Superior Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        1.  The Bankruptcy Court Has at Most "Related To" Jurisdiction
            Over the Malpractice Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            a.  This is Not a Core Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            b.  The Bankruptcy Court has at most "Related to"
                Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            c.  There is No "Related To" Jurisdiction After Plan
                Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        2.  Mandatory Abstention is Required Under 28 U.S.C.
            §1334(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3.  Permissive Abstention . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    B.  The Court Erred in Finding there was no Duty to Appellants . . . . . . . . . . . . . 19

        1.  Legal Standards on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . 19

        2.  CHANDLER Owed a Duty of Care to Appellants . . . . . . . . . . . . . . . . . 19

        3.  CHANDLER  had a Duty to Make Sure the Creditors' Interests
            Were Protected . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

i

**Table of Contents Cont'd**

III.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
**FEDERAL CASES**

*Allison v. California Adult Authority*, 419 F.2d 822 (9th Cir. 1969) . . . . . . . . . . . . . . . 25

*Baker v. Cuomo* (2nd Cir. 1995) 58 F.3d 814 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Baker v. Simpson*, 613 F.3d 346 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . 10, 17

*Celotex Corp. v. Edwards*, 514 U.S. 300, 115
    S. Ct. 1493, 131 L. Ed. 403 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Corrie v. Caterpillar, Inc.*, 503 F.3d 974 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . 2

*De La Cruz v. Tormey* (9th Cir.1978) 582 F.2d 45 . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 17

*Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717 (S.D. N..Y. 1992) . . . . . . . . . . . 23

*In re Fietz*, 852 F.2d 455 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

*Fisher, Hecht & Fisher v. D. H. Overmeyer* (N.D. Ohio, 1985) . . . . . . . . . . . . . . . . . . 21

*Gilligan v. Jamco Development Corp.* (9th Cir. 1997) 108 F.3d 246 . . . . . . . . . . . . 19

*Globaleyes Telecommunications, Inc. V. Verizon North* (S.d. Ill. 2010
    425 B.R. 481 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Harris Pine Mills*, 44 F.3d 1431 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Haws*, 158 B.R. 965 (Bankr.S.D.Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hays v. Bryan Cave LLP*, 446 F.3d 712 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . passim

*Hearn v. R J Reynolds Tobacco Co.* (D. AZ 2003) 279
    F.Supp.2d 1096 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Hessinger & Associates (*192 B.R. 211 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . 12

*Matter of Wood*, 825 F.2d 90 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pareto v. F.D.I.C.* (9th Cir. 1998) 139 F.3d 696 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005 . . . . . . . . . . . . . . . . . . 12, 13

*Peloza v. Capistrano Unified School District* (9th Cir. 1994) 37 F.3d 517 . . . . . . . . . 19

*In re Resorts International, Inc.*, 372 F.2d 154 (3rd Cir. 2004) . . . . . . . . . . . . . passim

iii

**Table of Authorities Cont'd**

*Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Sheridan*, 362 F.3d 96 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Southmark Corp.*, 163 F.3d 925 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 10, 16

*In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . 11, 18

*United National Insurance Co. v. R & D Latex Corp.*, 242 F.3d 1102
 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Redwood City* (9th Cir. 1981) 640 F.2d 963 . . . . . . . . . . . . . . . . . . 19

*In re Valdez Fisheries Development Associate*, 439 F.3d 545
 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Walsh v. Northwestern National Insurance Co.*, 51 F.3d 1473
 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Western Asbestos Co.*, 313 B.R. 859 (N.D.Cal. 2004) . . . . . . . . . . . . . . . . . . . 11

*In re Wood*, 825 F.2d 90 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATE CASES

*Biakanja v. Irving*, 49 Cal. 2d 647, 320 P.2d 16, 65 A.L.R. 2d 1358 . . . . . . . . . . . . . 21

*Budd v. Nixen* (1971) 6 Cal. 3d 195 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Donald v. Garry* (1971) 19 Cal. App. 3d 769 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Lucas v. Hamm*, 56 Cal. 2d 583, 15 Cal. Rptr. 821, 364 P.2d 685 . . . . . . . . . . . . . . 21

*Meighan v. Shore* (1995) 34 Cal. App. 4th 1025 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Starr v. Mooslin* (1971) 14 Cal. App. 3d 988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24

## MISCELLANEOUS

*Calderone v. United States* (6th Cir 1986) (quoting from Summary
 Judgment under the Federal Rules: Defining Genuine Issues of
 Material Fact (1984) 99 FRD 465 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## FEDERAL STATUTES

Federal Rules of Civil Procedure Rule 12B(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

11 U.S.C. §1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

28 U.S.C. § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Table of Authorities Cont'd**

28 U.S.C. § 158(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1334 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 1443(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. §1452 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**INTRODUCTION**

This is a legal malpractice claim against the attorney Appellants consulted with and relied upon to protect their interests in a bankruptcy. Appellants filed their complaint for legal malpractice in the Sonoma County Superior Court, and Appellee David N. Chandler and David N. Chandler, P.C. (collectively "CHANDLER") removed the case to the United States Bankruptcy Court for the Northern District, Santa Rosa Division. The Bankruptcy Court held that it had jurisdiction over Appellants' claims as a core proceeding even though the bankruptcy was closed and resolution of Appellants' claim against CHANDLER could not affect the administration of the bankruptcy estate. On a subsequent motion to dismiss, the Court concluded CHANDLER did not owe a duty of care to Appellants and granted the motion, thus leaving Appellants with no remedy.

Appellants' claim was based on state law and it sought to recover damages sustained by Appellants because of CHANDLER's negligence. By definition, any recovery by Appellants from CHANDLER in the malpractice action would represent funds to which only Appellants could have a right. Accordingly, Appellants' lawsuit cannot result in the recovery of any funds belonging to the bankruptcy estate or any other creditor.

Since the prosecution of Appellants' lawsuit against Appellee cannot affect the administration of the debtor's estate, this matter is not a core proceeding, and the Bankruptcy Court did not have jurisdiction over the claim. Alternatively, the Bankruptcy Court had only "related to" jurisdiction and it should have abstained from hearing the case under 28 U.S.C. § 1334(c).

As for the issue of CHANDLER's duty to Appellants, the Bankruptcy Court held that, because Appellants were members of a creditors' committee and CHANDLER had been appointed as the attorney for the committee, CHANDLER owed a duty of care only to the committee, which no longer exists. However, because it is undisputed that Appellants had initially consulted with CHANDLER to protect their own interests and they were the direct and intended beneficiaries of his legal services, under state law CHANDLER owed a duty to Appellants.

1

## BASIS OF APPELLATE JURISDICTION

Appellants appeal under 28 U.S.C. § 158(a) from the Order Granting David N. Chandler and David N. Chandler. P.C.'s Motion to Dismiss, entered on September 26, 2011, in the above-reference adversary proceeding.  Section 158(a), provides in relevant part:

> (a)  The district courts of the United States shall have jurisdiction to hear appeals
>
> (1)  From final judgments, orders, and decrees....

The bankruptcy Court's order granting the motion to dismiss was a final order in the proceedings below.

## ISSUES PRESENTED AND STANDARD OF APPELLATE REVIEW

1.      Did the Bankruptcy Court have jurisdiction to hear and decide Appellants' state law legal malpractice claim against Appellee?  Alternatively, should the Court have abstained from hearing the matter under 28 U.S.C. § 1443(c)(1)?

2.      Did the Bankruptcy Court err in granting Appellee's motion to dismiss on the grounds that, under state law, Appellee did not owe a duty of care Appellants?

The issue of the Bankruptcy Court's jurisdiction is an issue of law and review is *de novo.  See Robinson v. United States,* 586 F.3d 683, 685 (9th Cir. 2009).  As for whether the Bankruptcy Court should have abstained from hearing the case under 28 U.S.C. § 1334(c)(1), the standard of review is an abuse of discretion.  *United National Insurance Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1111-1112, fn. 10 (9th Cir. 2001).

Under California state law, the question of whether an attorney owes a duty of care to a plaintiff is a question of law (*Starr v. Mooslin* (1971) 14 Cal.App.3d 988, 998), and this Court's review of the Bankruptcy Court's order granting Appellee's motion to dismiss under Federal Rules of Civil Procedure Rule 12B(b)(6) is *de novo.  See, e.g., Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 979 (9th Cir. 2007).

/ / /

/ / /

## STATEMENT OF THE CASE

This proceeding involves a legal malpractice claim by Appellants against the attorney they consulted and relied upon regarding the bankruptcy of Colusa Mushroom, Inc. ("Colusa").  Appellants were investors in Colusa, and when Colusa filed bankruptcy Appellants consulted with CHANDLER to protect their interests as creditors.  CHANDLER advised Appellants to form a creditors' committee, which they did and CHANDLER was appointed as counsel for the creditors' committee.

A plan of reorganization was approved in the Colusa bankruptcy under which Colusa sold its assets to a purchaser (Premier), and the unsecured creditors (including Appellants) were to receive a pro rata share of a note given by Premier.  The note was for approximately $1,300,000, payable in three annual installments of $100,000 with the balance due the fourth year.  The bankruptcy was then closed.

The note was supposed to be secured against Premier's assets, but the security was never perfected.  CHANDLER, having negotiated the plan of reorganization and knowing of the need for security, failed to take any action to secure the promissory note.  Premier made the first three payments of $100,000 each, but refused to make the final payment of more than $1,000,000.

The Colusa bankruptcy was reopened and converted to a Chapter 7.  The bankruptcy trustee agreed to compromise Premier's obligation for a payment of approximately $100,000.  The compromise was approved by the Bankruptcy Court.  The creditors, including Appellants, will receive nothing more.

In their malpractice claim, Appellants contend CHANDLER owed them a duty of care since they had consulted with CHANDLER and relied upon him to protect their interests.  Appellants contend CHANDLER was negligent by failing to take any action regarding the perfection of the promissory note from Premier that was the only source of payment to Appellants.

/ / /

/ / /

APPELLANTS' OPENING BRIEF

Appellants filed their legal malpractice claim in State Court and CHANDLER removed the case to Bankruptcy Court.  Appellants moved to remand the case, but the Bankruptcy Court held that the matter was a core proceeding because CHANDLER had been appointed by the Court.

Appellee's motion to dismiss was granted on the grounds that Appellee did not owe a duty of care to Appellants.  The Bankruptcy Court concluded that CHANDLER did not have a specific duty to record the security at issue.  In other words, the Court concluded CHANDLER did not *breach* his duty.  The question before the Court, however, was the legal question of the *existence* of a duty, not the factual question of whether that duty was breached.

## ARGUMENT

### I.      FACTUAL AND PROCEDURAL BACKGROUND

#### A.      The Colusa Mushroom Bankruptcy

Colusa Mushroom, Inc. ("Colusa") initiated a chapter 11 bankruptcy proceeding on August 22, 2005.  Appellants were investors in Colusa, and they consulted with CHANDLER to protect their interests regarding Colusa's bankruptcy.  (Schultze Decl. ¶¶ 3-4, Doc # 3-14.)  Upon CHANDLER's advice, Appellants formed a creditors' committee, and on December 29, 2005, an order was entered authorizing the creditors' committee to employ CHANDLER.  (Chandler Decl. ¶ 3.c, Doc, Doc  3-16.)

On June 29, 2006, the Bankruptcy Court entered its order confirming Colusa's plan of reorganization (the "Plan").  The Plan provided for Colusa to sell its assets through an assigned purchase agreement to Premier Mushroom, LP ("Premier").  Under the Plan, after the payment of senior claims, unsecured creditors (such as Appellants) were to be paid a pro rata share of the purchase price, with Premier to make three annual payments of $100,000 and a final payment of $1,022,453 in July, 2010.  Premier's promissory note was to be secured by a blanket security interest in all assets purchased by Premier.  (See Meyer Decl., ¶¶ 7-8, Doc # 3-11.)

That security was never perfected.  CHANDLER was fully aware that the note was to be secured by a priority lien on Premier's assets.  (Chandler Decl. ¶ 5, Doc # 3-10.)  Indeed, his job as

the attorney for the creditors' committee was to negotiate such a term to protect the unsecured creditors. Apparently, CHANDLER now contends he had no obligation to ascertain whether the Plan was actually implemented or if the security was perfected, even though the creditors, including Appellants, were relying solely on CHANDLER to see to that their interests were protected.

A liquidating trustee (Michael Meyer) was appointed to administer payments by Premier under the terms of the Plan. CHANDLER was approved to be employed as attorney for the liquidating trustee by order entered on December 14, 2006. The Court entered its Final Decree and closed the bankruptcy proceedings on March 12, 2008. (See Chandler Decl. ¶ 3, Doc ¶ 3, Doc 3-10.)

Premier made its first three annual payments but failed to make the final payment of $1,022,453 due in July, 2010. (Meyer Decl. ¶ 8, Doc # 3-11.)

## B.    The Legal Malpractice Complaint

After learning the Premier's promissory note was not secured, Appellants filed their complaint against CHANDLER alleging one cause of action for professional negligence. (The Complaint is attached as Exhibit A to the Notice of Removal, Doc # 3-1.) The complaint alleges that Appellants consulted with CHANDLER to represent them and to protect their interests in the Colusa bankruptcy. (Complaint, ¶ 5.) Upon CHANDLER's advice, Appellants formed a creditors' committee and thereafter CHANDLER was authorized to act as counsel for the committee.

The complaint alleges that, although Colusa's Plan called for Premier's promissory note to be secured by Premier's assets, the security was never perfected, and that CHANDLER had been negligent by failing to takes steps to secure Premier's obligation. (Complaint, ¶¶ 13-14.) Because the security was not perfected, Colusa was able to take out additional loans secured against its assets with the result that Appellants have only an unsecured claim; even if their claim could now be secured, Colusa is so over-encumbered as to render the security worthless. (Complaint, ¶ 15.)

The complaint alleges that, in the absence of CHANDLER's negligence, Appellants would have received their share of the purchase price owed by Premier (either by payment or by foreclosing

on their security).  Appellants seek to recover the amount of money they would have received under the Plan had their security been perfected.  (Complaint, ¶ 15.)

Appellants' civil action does not seek recovery any fees paid to CHANDLER in the bankruptcy proceeding and it does not seek recovery of any amount based on what other members of the creditors' committee may have received or may recover in the future.  Appellants seek only the amounts they personally should have received.

## C.     CHANDLER Removes the Legal Malpractice Complaint

CHANDLER removed the Superior Court action to the Bankruptcy Court contending that the action is a core proceeding "as the suit is related to the bankruptcy proceeding" and jurisdiction is based on 28 U.S.C. §§ 157(a), 1334(b) and 1452.  (See Notice of Removal, ¶ 9, Doc # 3-1.))

Appellants contested the bankruptcy Court's jurisdiction, contending the matter should be remanded because the lawsuit was based on state law and its resolution would have no effect on the administration of the bankruptcy estate.  (See Creditors'/Plaintiffs' Memorandum of Points and Authorities Re: Court's Jurisdiction, Doc # 3-2.)  CHANDLER opposed arguing that any claim against him belongs to the creditors' committee as a whole and is therefore a core proceeding.  (See CHANDLER's Opposition to Creditors' Memorandum of Points and Authorities Re: Court's Jurisdiction, Doc # 3-3.)

The Bankruptcy Court denied the motion to remand holding:

> If a malpractice action is directed against a professional appointed by a bankruptcy court, there is federal jurisdiction over the matter and it is treated as a core proceeding…
> …. The liability of court-appointed counsel to the committee or its members is an issue which, by its very nature, can only arise in a bankruptcy context.  The federal courts have a compelling interest in insuring that counsel are not discouraged from representing creditors' committees for fear of unreasonable liability, especially when their compensation had already been subject to federal adjudication.

(Memorandum re Jurisdiction, 2:6-18, Doc # 3-6.).)

### D.    Chandler's Motion to Dismiss

CHANDLER filed a motion to dismiss contending he owed no duty of care to Appellants because he was counsel for the creditors' committee.  He also contended Appellants' claim was barred by issue preclusion and quasi-judicial immunity.  (See Motion to Dismiss, Doc # 3-8 and Doc # 3-9.)

The Bankruptcy Court granted the motion on the grounds that CHANDLER owed no duty to Appellants.  The Court based its decision on two factors.  First was the "remoteness" of CHANDLER's failure to perfect the security interest.  The Court stated that "the failure of an experienced commercial lawyer [i.e., Colusa's lawyer] to file a financing statement is certainly not foreseeable."  (Memorandum on Motion to Dismiss, 3:13-15, Doc # 3-17.)  Second, the court believed that imposing liability here would "chill" the willingness of attorneys to act as counsel for creditors' committees.  The Court concluded: "Thus, not only is there no moral blame attributable to Chandler's conduct, but more future harm would result from holding him liable than from exculpating."  (*Id.*, 3:24-26.)

### E.    The Settlement with Premier

Independently of Appellant's adversary action, the Colusa bankruptcy was reopened and converted to a Chapter 7.  Although Premier owed more than $1,000,000 on its promissory note, the trustee recommended settling for $102,245.00.  (See Motion for Approval of Settlement Agreement, Doc # 3-22.)  CHANDLER opposed the settlement, although he recognized that "Premier has been subject of an involuntary petition and is no doubt encumbered in excess of the value of its assets...."  (Opposition to Motion to Approve Compromise, 2:13-15, Doc # 3-24.)  The settlement was approved.  (Order Approving Settlement, Doc # 3-29.)

Because Premier has settled its obligation, there will be no further payments under the Plan, and the creditors, including Appellants, will not receive any further payments on their claims.  Now that their malpractice claim has been dismissed, Appellants are left with no means for making up the losses they have sustained.

## II.     DISCUSSION

The Bankruptcy Court concluded it had jurisdiction because CHANDLER was a court-appointed attorney and the court has a "compelling interest in insuring that counsel are not discouraged from representing creditors committees." As discussed below, despite the Bankruptcy Court's interest in monitoring the conduct of court-appointed professionals, that alone does not create jurisdiction. Appellants' claim is a creature of state law and its resolution will not impact the administration of the bankruptcy estate. Therefore, this action is not a core proceeding. Even if the Court has "related to" jurisdiction, it was obligated to remand the matter under 28 U.S.C. § 1334(c).

The Court ruled that Appellants have no standing to sue because CHANDLER's duty was only to the creditors' committee. Presumably, if the creditors' committee still existed, the Court would have concluded that the committee could have brought suit against CHANDLER. However, CHANDLER's liability should not be dependent on whether the creditors' committee still exists.

The Court's conclusion that CHANDLER did not have a duty to record the security instrument itself answered the wrong question. The Court addressed whether CHANDLER had a duty to perform a particular act, and that asks a factual question of whether he met the standard of care. The question present here, however, is whether CHANDLER owed a duty of care in the first place. Under state law, given that Appellants went to CHANDLER for advice, they relied on his advice, they were the intended beneficiaries of his legal services, CHANDLER owed a duty of care to these Appellants.

### A.     The Bankruptcy Court was Obligated to Remand the Case to Superior Court

#### 1.     The Bankruptcy Court Has at Most "Related To" Jurisdiction Over the Malpractice Claim

Appellants' legal malpractice claim is purely a creature of state law, even though the claim arose out of an underlying bankruptcy. There is no special rule that an attorney representing creditors in a bankruptcy cannot be sued by those clients in state court for malpractice.

By way of their complaint, Appellants seek to recover losses that are personal to them. Resolution of that claim cannot affect the debtor, other creditors, or the administration of the debtor's

estate.  Therefore, Appellants' claim is not a core proceeding.  The Bankruptcy Court had at most "related to" jurisdiction and was obligated to remand the case to state court.

### a.    This is Not a Core Proceeding

"[A] proceeding is core under [28 U.S.C.] section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987).  A lawsuit based on state created rights that could be heard in state court, had there been no bankruptcy, is not a core proceeding.  *Ibid.*  "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of the bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but ... it is an 'otherwise related' or non-core proceeding." *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995).

Appellants' legal malpractice claim is based on state law and the claim exists independently of federal law.  "The elements of legal malpractice .... an attorney-client relationship, a duty arising from that relationship, a breach of that duty, and actual damages or injury proximately caused by that breach .... are independent of the law under which the suit that the defendant lawyer is alleged to have muffed was brought." *Hays v. Bryan Cave LLP*, 446 F.3d 712, 714 (7th Cir. 2006) [holding that federal district court had no jurisdiction to hear legal malpractice claim arising from defendant attorney's representation of plaintiff in an underlying federal criminal case, despite fact that defendant raised defenses based on federal law].[1]

The instant legal malpractice claim does not invoke any right created by federal bankruptcy law.  The prosecution of the claim does not affect, or even involve, the administration of the debtor's estate.  Nor will the outcome of the lawsuit affect the debtor or any other creditors.  It is a dispute between an attorney and the clients who relied upon him to protect their interests.  There mere fact

---

[1]  *Hays* relied on Illinois state law regarding legal malpractice claims; under California law, the elements of a cause of action for legal malpractice are the same.  *See, e.g., Budd v. Nixen* (1971) 6 Cal.3d 195, 200.

that the attorney's error occurred while representing clients in a bankruptcy does not change the fact that the clients' claim arises from state law. (*Ibid.*)

The Bankruptcy Court nevertheless concluded that "If a malpractice action is directed against a professional appointed by a bankruptcy court, there is federal jurisdiction over the matter and it is treated as a core proceeding." (Memorandum re Jurisdiction, 2:6-7, Doc # 3-6.) While the fact that CHANDLER was appointed to represent the creditors' committee may have created "some kind" of jurisdiction, Appellants' lawsuit is not a core proceeding. If the matter is not a core proceeding, the Bankruptcy Court was obligated to abstain under 28 U.S.C. § 1334(c). *In re Southmark Corp.*, 163 F.3d 925, 928-929 (9th Cir. 1999) ("*Southmark*").

In *Southmark*, the Court of Appeals concluded that a malpractice action by the debtor against the court-appointed accountants was a core proceeding because the claim involved the *debtor's* recovery of an asset against a third party; recovery *by the debtor* from the accountants would have affected distribution to the creditors: "The claim against [the accountants] may therefore be viewed as one to recover an asset of Southmark's estate that [the accountants] let slip away." (*Id.* at 931.) Moreover, the malpractice claim "may invoke the bankruptcy court's core jurisdiction to adjudicate and determine the extent of the claims by and against Southmark's estate." (*Id.* at 932.) The Court of Appeals concluded that, because the malpractice action "seeks to recover on the claim Southmark would have had against" a third party, the claim was core proceeding. (*Id.*)

The other cases cited by the Bankruptcy Court in its decision also involved claims by either the debtor or the bankruptcy trustee to recover bankruptcy assets. *Walsh v. Northwestern National Insurance Co.*, 51 F.3d 1473 (9th Cir. 1995), concerned an adversary action by a successor trustee to recover on a surety bond because of embezzlement by the predecessor trustee. *Baker v. Simpson*, 613 F.3d 346 (2nd Cir. 2010), involved a claim by the debtor against his own bankruptcy counsel; the Court found the claim "was an 'essential part of administering the estate' and therefore implicated the bankruptcy court's 'core jurisdiction.'" (*Id.* at 351.) Similarly, *In re Com 21*, WL 1606357*7 (N.D. Cal.

2005), an unpublished decision cited by the Bankruptcy Court, involved a legal malpractice claim by a trustee against the law firm that represented the debtor-in-possession before the trustee was appointed.  The District Court held that "the resolution of the claims at issue would have an impact on the bankruptcy administration in progress.  (*Id.* at page 7.)

All of these cases involved claims brought directly by a debtor or trustee, the claims were to recover the value of bankruptcy assets, and the resolution of the claims would necessarily impact the administration of the estates.  Unlike the foregoing cases, the present claim is brought by creditors against the attorney they consulted, the claim seeks to recover losses personal to each plaintiff, and the resolution of the case could not impact the administration of the bankruptcy estate.  Bankruptcy Courts do not have jurisdiction over proceedings that have no effect on the debtor's estate.  *In re Western Asbestos Co.*, 313 B.R. 859 (N.D.Cal. 2004).

Appellants' claim does not invoke a substantive right created by federal law; instead, it is a state law legal malpractice claim.  *Hays v. Bryan Cave LLP, supra,* 446 F.3d at 714.  Even though the case arose from a bankruptcy proceeding, the claim could exist and be prosecuted outside of the Bankruptcy Court.  *In re Wood,* 825 F.2d 90, 97 (5th Cir. 1987)[lawsuit based on state created right not a core proceeding]; *see also, In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167-1169 (9th Cir. 1990).

Even though CHANDLER was appointed by the Court to represent the creditors' committee, Appellants' claim is not based on the fact that the Court appointed CHANDLER as the attorney for the creditors' committee.  Instead, it is based on the fact that Appellants came to CHANDLER for advice, they relied on that advice, and Appellants were undeniably the intended beneficiaries of CHANDLER's legal services.  Such a claim does not invoke a substantive right created by federal law.  *Hays v. Bryan Cave LLP, supra,* 446 F.3d 712, 714; *see also, In re Resorts International, Inc.*, 372 F.2d 154, 163 (3rd Cir. 2004) [malpractice claim by bankruptcy trustee against its accounting firm is not a core proceeding; "it is not a proceeding that invokes a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case."]

While the Bankruptcy Court certainly has an obligation to monitor the professional it appoints, the mere fact of that appointment does not give the Bankruptcy Court jurisdiction over claims against the professional that do not impact the bankruptcy proceeding itself.  For example, in *In re Sheridan*, 362 F.3d 96, the Court of Appeals held that the bankruptcy court did not have jurisdiction over a disciplinary action arising from the court-appointed attorney's misconduct in bankruptcy court because there would be only remote impact on the bankruptcy.  The result would be different if the proceeding results in a disgorgement of the attorney's fees, because that would affect the administration of the estate. *In re Hessinger & Associates* (192 B.R. 211, 219-220 (N.D. Cal. 1996)

Here, Appellants do not seek disgorgement of CHANDLER's fees and their claim is not based on the fact CHANDLER was appointed by the court.  The claim is based on state tort law and its resolution will have no affect at all on the bankruptcy.  The proceeding is therefore not a core proceeding.

### b.    The Bankruptcy Court has at most "Related to" Jurisdiction

The Bankruptcy Court noted: "The liability of court-appointed counsel to the committee or its members is an issue which, by its very nature, can only arise in a bankruptcy context."  (Memorandum re Jurisdiction, 2:14-16, Doc # 3-6.)  However, the mere fact that the malpractice claim arose in a bankruptcy context does not mean the claim is a core proceeding; otherwise, all claims arising out of a bankruptcy context would be core proceedings.  Here, because Appellants' complaint is based on state law and their recovery of damages from CHANDLER will not affect the bankruptcy, the Bankruptcy Court has, at most, "related to" jurisdiction.

The Ninth Circuit has adopted the "*Pacor* test" for determining "related to" jurisdiction.  *In re Pegasus Gold Corp.,* 394 F3d 1189, 1193 (9th Cir. 2005).  That test is whether "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.  Thus, the proceeding need not necessarily be against the debtor or the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of

action (either positively or negatively) and which in any way impacts upon the handling and

administration of the bankruptcy estate." *In re Fietz*, 852 F.2d 455. 457 (9th Cir. 1988).

The *In re Pagasus Gold* Court noted that "related to" jurisdiction is more attenuated post-confirmation:

> We agree that post-confirmation bankruptcy court jurisdiction is
> necessarily more limited than pre-confirmation jurisdiction, and that the
> *Pacor* formulation may be somewhat overbroad in the post-confirmation
> context. Therefore, we adopt and apply the Third Circuit's 'close nexus'
> test for post-confirmation 'related to' jurisdiction, because it recognizes
> the limited nature of post-confirmation jurisdiction but retains a certain
> flexibility, which can be especially important in cases of continuing trust.
>
> (*Supra.*, 394 F.3d at 1194, *citing In re Resorts International*, 372 F.3d
> 154, 161 (3rd Cir. 2004).)

"Related to" jurisdiction was thoroughly analyzed in *In re Resorts International, Inc.*, 372 F.3d

154 ("*Resorts International*"), a case essentially identical to the present one.  In *Resorts International*,

the Court of Appeals concluded that the bankruptcy court did not have "related to" jurisdiction over a

professional negligence claim against the accountants retained by a litigation trust created under the

plan of reorganization.  The litigation trustee brought an adversary proceeding alleging the

accountants erred in reporting the entitlement to certain post-confirmation interest payments; that

dispute was resolved by the bankruptcy court partly in favor of the debtor and partly in favor of the

trust.  The litigation trustee contended the bankruptcy court had jurisdiction over the malpractice claim

because it involved "the performance of professionals whose retention was mandated and whose

duties were specified" under the terms of the plan, over which the bankruptcy court had retained

jurisdiction.  (*Id.* at 160-161.)  The Court nevertheless held there was no basis for "related to"

jurisdiction because resolution of the malpractice claims would not affect the estate, it would have only

incidental effect on the reorganized debtor, and it would not interfere with the implementation of the

reorganization plan.  (*Id.* at 169.)

The litigation trustee argued that the dispute was a continuation of the bankruptcy proceeding

and the bankruptcy court had retained jurisdiction; the Court of Appeal noted:

Retention of jurisdiction provisions will be given effect, assuming there is bankruptcy court jurisdiction.  But neither the bankruptcy court nor the parties can write their own jurisdictional ticket.  Subject matter jurisdiction 'cannot be conferred by consent' of the parties.  [Citation.]  Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization.

(*Id.* at 161.)

The court concluded the bankruptcy court did not have related-to jurisdiction:

The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; although it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims, and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157.  For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's "related to" jurisdiction post-confirmation.

(*Id.* at 169.)

Here, the effect on the bankruptcy is even more attenuated.  Resolution of the malpractice claim will have no effect on the debtor or other creditors.  This result is all the clearer now that there has been a settlement with Premier regarding its liability for the promissory note at issue.  Now, the malpractice lawsuit will affect only Appellants and CHANDLER.  There is no nexus with the bankruptcy at all except that the claim arose from CHANDLER's conduct in that bankruptcy.

Appellants' cause of action is based entirely on state law and in no way depends on title 11 for its existence.  Appellants' complaint is no more dependent on or arising under the bankruptcy proceeding than was the plaintiff's legal malpractice claim in *Hays*, or the professional negligence claim against the accountants in *Resorts International*.  Obviously, in *Hays* the malpractice claim would not have existed but for the underlying federal criminal case, and in *Resorts International*, the malpractice claim would not have existed had there not been the underlying dispute over accrued interest that was resolved by the bankruptcy court.  But the fact that the malpractice claims arose out of federal proceedings did not change the state law claims to ones based on federal law.

Nor would it make a difference if Appellants' claim required an analysis of bankruptcy law or of Colusa's plan of reorganization. "[T]here is nothing unusual about a court having to decide issues that arise under the law of other jurisdictions; otherwise there would be no field called 'conflict of laws' and no rule barring removal of a case from state to federal court on the basis of a federal defense. 'Mentioning a federal issue in a contract, or for that matter a complaint, does not determine the source of the claim itself.' [Citation]" (*Hays, supra,* 446 F.3d at 714.) As in *Resorts International*: "The Trustee's claims are 'ordinary' professional negligence and breach of contract claims that arise under state common law. Though the Plan and Trust Agreement provide the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction." (*Id.* 372 F.3d at 170.)

Similarly, in *In re Haws*, 158 B.R. 965 (Bankr.S.D.Tex. 1993), a trustee for a liquidating trust brought a breach of fiduciary claim against the partner of the bankruptcy debtor. The court held there was no bankruptcy jurisdiction noting: "The only nexus to this bankruptcy case is that the plaintiff in this matter is the liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of reorganization." (*Id* at 971.) Under this holding, there would be no jurisdiction in the present case even if it had been brought by the liquidating trustee, in which case any recovery would be made in fulfillment of the plan of reorganization.

The present claim is more attenuated than the trustee's claim in *In re Haws* since it is brought by individual creditors against their attorney and it could result only in the payment by the attorney to these creditors. The outcome of Appellants malpractice action therefore, cannot affect the administration of the debtor's estate. If Appellants lose, there will be no recovery of funds and no conceivable impact on the estate. If Appellants prevail, they will be awarded their damages. As mentioned above, an award to Appellants can reflect only that to which Appellants were entitled to, and such an award, by definition, cannot reflect money that should have gone to the estate or to anyone else but Appellants.

Because the prosecution of Plaintiffs malpractice action cannot affect the debtor, other creditors, or the administration of the estate, there is no basis for jurisdiction in this Court.  As the Supreme Court has made clear, "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."  *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, fn. 6, 115 S.Ct. 1493, 131 L.Ed. 403 (1995).

### c.   There is No "Related To" Jurisdiction After Plan Confirmation

Even if there otherwise could be related to jurisdiction, there can be no jurisdiction over a claim – though factually connected to a bankruptcy proceeding – after the debtors' plan of reorganization has been confirmed and all property has vested in the debtor.  *In re Valdez Fisheries Development Assoc.*, 439 F.3d 545, 547 (9th Cir. 2009); *see also, In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).

Here, the Plan specifically provided that upon the Effective Date of the Plan "all property of the Estate shall be transferred to, and shall vest in the reorganized Debtor." (Plan, 9, lines 9-10.)  Now that the assets have vested in the debtor (and have been sold to Premier) there is nothing left in the estate.  Therefore, Appellants' claim could not affect the debtor or the administration of the estate.  Since the lawsuit could not have any effect on the estate, there can be no "related to' jurisdiction. *Ibid.*  See also *Globaleyes Telecommunications, Inc. v. Verizon North, Inc.* (S.D.Ill. 2010, 425 B.R. 481) [Confirmation of a Chapter 11 plan ends the existence of the bankruptcy estate and therefore post-confirmation adversary proceedings cannot qualify as "arising in" a case under § 1334.]

### 2.   Mandatory Abstention is Required Under 28 U.S.C. §1334(c)(2)

As discussed above, the Bankruptcy Court had, at most, related to jurisdiction. "That the bankruptcy court has some kind of jurisdiction over this malpractice action against court-appointed professionals is not in doubt.... If the suit ... is merely 'related to' the bankruptcy, the bankruptcy court was require to abstain from hearing it.  28 U.S.C. § 1334(c)2." *In re Southmark Corp., supra,* 163 F.3d at 928-929.

/ / /

---

28 United States Code § 1334 (c)(2) provides:

> Upon timely motion of a party in a proceeding based on a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commences in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a Stat forum of appropriate jurisdiction.

"For mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding." *In re Dow Corning Corp.*, 86 F.3d 482 (6th Cir. 1996); see also *Baker v. Simpson*, 613 F.3d 346, 350 (2nd Cir. 2010) ["Mandatory abstention applies when a proceeding based upon a state law claim or state law cause of action is related to a case under Title 11 but does not arise under or arise in a case under Title 11.  28 U.S.C. § 1334 (c)(2)."  (Internal quotations omitted.)]

These criteria are met here: (1) the complaint is based on a state law claim of professional negligence, (2) there is no federal jurisdiction other than the dispute arose out of CHANDLER's representation of Appellants in a bankruptcy, (3) the action was commenced in state court, (4) the lawsuit can be timely adjudicated in state court, and (5) the complaint is a non-core proceeding.

Accordingly, mandatory abstention applies and the Bankruptcy Court erred by failing to remand the case to state court. *Cf, In re Tucson Estate, Inc. supra,* 912 F.2d at 1169.

### 3.   Permissive Abstention

Alternatively, the Bankruptcy Court should have abstained from hearing this case under 28 U.S.C. § 13344(c)(1) which reads:

> Nothing in this section prevents a district court in the interest of justice or in the interest of comity with the State courts or respect for the State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Court of Appeal in *In re Tucson Estates, Inc., supra,* 912 F.2d 1162, described as follows the factors to be considered when deciding whether to abstain:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. §1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

(*Id.* at 1167.)

Weighing these factors in this case dictates abstention: (1) abstention will have no effect on the administration of the estate, (2) state law issues predominate; the malpractice case is based on state law; the only aspect involving interpretation of the debtor's plan is whether it called for Premier's promissory note to be secured, and that issue is not in subject to dispute, (3) there are no unsettled issues of law, (4) there are no related proceedings, (5) jurisdiction is based only on 28 U.S.C. § 1334, (6) the malpractice case is remote from the bankruptcy proceeding in that it involves a dispute solely between creditors and their attorney, (7) the malpractice claim is not a core proceeding, (8) severance of claims does not apply, (9) Appellants have no information as to the burden on the Court should it hear this case, (10) Appellants can only suspect that CHANDLER removed the case to forum shop, and (11) all the parties to the malpractice action are nondebtors.

Thus, the factors supporting abstention are over-whelming and the Bankruptcy Court abused its discretion by not abstaining.

/ / /

/ / /

**B.    The Court Erred in Finding there was no Duty to Appellants**

**1.    Legal Standards on a Motion to Dismiss**

In testing the allegations of a complaint challenged by a Rule12(b)(6) motion, the court must decide whether the facts alleged in the complaint, if true, entitle the plaintiff to some form of recovery; unless the facts unequivocally show there are no circumstances under which the plaintiff may recover, the motion must be denied.  *De La Cruz v. Tormey* (9th Cir. 1978) 582 F.2d 45, 48.  "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim."  *Hearn v. R J Reynolds Tobacco Co.* (D. AZ 2003) 279 F.Supp.2d 1096, 1101.  The Court must accept that the allegations of the complaint are true, as well as reasonable inferences to be drawn from them (*Pareto v. F.D.I.C.* (9th Cir. 1998) 139 F.3d 696, 699), and that the allegations "embrace whatever specific facts might be necessary to support them."  *Peloza v. Capistrano Unified School District* (9th Cir. 1994) 37 F.3d 517, 521.

"A motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." (*Gilligan v. Jamco Development Corp.* (9th Cir. 1997) 108 F.3d 246, 249).  The motion should be granted only in "extraordinary" cases.  *United States v. Redwood City* (9th Cir. 1981) 640 F.2d 963, 966.  Rule 12(b)(6) motions to dismiss are "especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development."  *Baker v. Cuomo* (2nd Cir. 1995) 58 F.3d 814, 818-819.  "Where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States* (6th Cir. 1986) (quoting from *Summary Judgment under the Federal Rules: Defining Genuine Issues of Material Fact* (1984) 99 FRD 465, 487-488).  .

**2.    CHANDLER Owed a Duty of Care to Appellants**

Whether Appellants have a legal malpractice claim against CHANDLER is a matter of state law.  *Hays v. Brian Cave, LLP, supra*, 336 F.3d 712 [holding that federal district court had no

jurisdiction to hear a legal malpractice claim arising from defendant attorney's representation of plaintiff in an underlying federal criminal case]. "The elements of legal malpractice ... an attorney-client relationship, a duty arising from that relationship, a breach of that duty, and actual damages or injury proximately caused by that breach ... are independent of the law under which the suit that the defendant lawyer is alleged to have muffed was brought." (*Ibid.*)

The Bankruptcy Court concluded CHANDLER cannot be liable because he was the attorney for the creditors' committee, and therefore Appellants cannot bring individual claims. This conclusion ignores two things. First, the creditors' committee no longer exists, and there is no committee to represent Appellants' claims against CHANDLER. The creditors' committee was formed to represent Appellants' claims *against the debtor* as unsecured creditors; the creditors' committee was never authorized to pursue claims for legal malpractice on behalf of the unsecured creditors. Creditors' committees under 11 U.S.C § 1102 are, by definition, creditors with claims against the debtor.

Second, under well established case-law, Appellants have standing to sue CHANDLER directly for legal malpractice because they were the intended beneficiaries of his legal services. CHANDLER's liability to Appellants is not dependent upon whether he was their attorney of record, and liability is not precluded because CHANDLER represented the creditors' committee. Privity of contract is not a prerequisite to liability for legal malpractice.

For example, in *Meighan v. Shore* (1995) 34 Cal.App.4th 1025, a husband and wife consulted the defendant attorney about a personal injury sustained by the husband. The Court of Appeal held that, even though the attorney had been consulted about an injury to the husband, the attorney could be liable for failing to advise the wife of her potential claim for loss of consortium.

> We are satisfied that, in California, professional liability is not dependent upon privity of contract, but the presence or absence of a client's intent that the plaintiff benefit from or rely upon the attorney's services is particularly significant in the determination of duty. Intended reliance may be express or implicit, obvious or subtle. In the final analysis, application of duty depends on the particular factual setting of the case.
> (*Id.* at 1041.)

The issue is whether CHANDLER owed a duty to Appellants in the circumstances presented here.  That such a duty existed cannot be doubted since CHANDLER was retained to protect the interests of the unsecured creditors.  In *Fisher, Hecht & Fisher v. D. H. Overmeyer* (N.D. Ohio, 1985) 47 B.R. 823, the Court held that the debtor could not pursue a legal malpractice claim against the law firm representing the creditors' committee:  "[The law firm's] duty of loyalty and allegiance was owed to the creditors' committee *and to the creditors* whom that committee was to represent.  The malpractice and breach of fiduciary duty claims belong to the creditors' committee *or to the unsecured creditors in general*."  (*Id.* at 824.)[1]  (Emphasis added.)

The law in California regarding an attorney's liability to those intended to benefit from the attorney's services has been summarized as follows:

> An attorney may be liable for damage caused by his negligence to a person intended to be benefited by his performance irrespective of any lack of privity of contract between the attorney and the party to be benefited.  [Citation.] The liability sounds in tort.  [Citation.] The determination of whether the duty undertaken by an attorney extends to a third person not in privity 'involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm.' (Biakanja v. Irving, 49 Cal.2d 647, 650, 320 P.2d 16, 19, 65 A.L.R.2d 1358; see also Lucas v. Hamm, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685.)
>
> (Donald v. Garry (1971) 19 Cal.App.3d 769, 771-772.)

In *Donald v. Garry*, an attorney was retained by a collection agency to collect a debt owed to the plaintiff.  The claim was dismissed because of the attorney's negligence, and the plaintiff sued the attorney for malpractice.  The attorney contended he was not liable because there was no attorney-client relationship.

---

[1] The court also held that it did not have jurisdiction to hear the legal malpractice claim because it would not affect the administration of the estate and it was a matter of state law.  (*Id.* at 825.)

APPELLANTS' OPENING BRIEF

- 21 -

The Court of Appeal held the attorney could be liable based on an analysis of the factors listed above.

> In the case at bench, the transaction in which respondent's negligence occurred was intended primarily for the benefit of appellant. Respondent was retained to collect an account due him. Harm to appellant from respondent's negligence in failing diligently to prosecute the litigation was clearly foreseeable. The degree of certainty that appellant suffered injury is unquestioned if, as we must, we assume the allegations of the complaint to be true. On that same assumption, there is a direct connection between respondent's conduct and the injury suffered. There is certainly some moral blame and no virtue whatsoever in respondent's unjustified procrastination. Lastly, there is a policy that lawsuits should be diligently prosecuted which is served by fastening liability upon respondent in the case at bench and which would be frustrated by permitting the dilatory lawyer the luxury of insulation from liability because he was employed by a collection agency serving as an intermediary rather than by the client whose debt he was retained to collect.

(*Id.* at 772.)

Applying these factors here, leads to the same result. Most significantly, the intended beneficiaries of CHANDLER's services were Appellants and the other creditors; CHANDLER's services had no goal other than to benefit the creditors, and it was Appellants who initially contacted CHANDLER to protect their interests. (Schultze Decl. ¶¶ 3-4, Doc # 3-14.) It was foreseeable that Appellants would suffer if CHANDLER failed in his duties since they were the only persons who would actually sustain harm in the case of CHANDLER's malpractice. It is certain that Appellants have sustained harm in that the promissory note which provided the only means to pay Appellants and the other creditors is unsecured and now worthless. CHANDLER's conduct is closely related to Appellants' harm in that he had an obligation to make sure the creditors' interests were adequately protected; indeed, that was his only obligation. And, as in *Donald v. Garry*, there is moral blame in that there is no virtue in CHANDLER's failure to exercise reasonable care. Finally, if Appellants are not able to pursue their claims, CHANDLER will be insulated from liability only because he was the attorney of record for the creditors' committee as opposed to Appellants, and the creditors' committee no longer exits.

CHANDLER asserted that counsel for the creditors' committee does not owe a duty to one creditor to maximize its interest at the expense of the remaining creditors in the represented class. (*Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (S.D. N..Y. 1992)  However, Appellants are not asking to have their claims "maximized" over those of other creditors.  Appellants seek to recover what they personally loss.  Such recover would have no affect on any other creditors.

### 3.    CHANDLER  had a Duty to Make Sure the Creditors' Interests Were Protected

The Bankruptcy Court concluded that CHANDLER should not be held liable for the failure to perfect the security for the promissory note from Premier because it was not his job and he had no obligation to make sure the debtor's counsel had properly filed the financing statement.

> It there was negligence, it was on the part of Colusa's counsel.  Chandler did not have the right or the power to file the financing statement, nor was it his responsibility to do to.  Plaintiffs allege that Chandler did not check to make sure that Colusa's counsel filed the statement properly, but the failure of an experienced commercial lawyer to file a financing statement is certainly not foreseeable.  Applying plaintiffs' theory of expanded duty would mean that each creditor has a cause of action against his own attorney and the attorneys for the others for failing to double-check the actions of Colusa's counsel.
> (Memorandum on Motion to Dismiss, 3:10-16.,Doc # 3-17.)[1]

Whether CHANDLER was supposed to undertake the actual task of recording the required security is irrelevant.  CHANDLER's duty was to make sure the interests of the creditors were protected.  Their interest could be protected only if the required security instrument was recorded, and there was nothing that prevented CHANDLER from ascertaining whether it had been recorded.  That was his job.  It is absurd to contend that Appellants and the other creditors could only rely on either the debtor or the buyer to protect their interests; those parties were adverse to the creditors.

---

[1]   The Court's comment about Colusa's counsel's negligence is puzzling.  Colusa had no pecuniary interest in whether the promissory note was secured or even paid since any payments would go to the creditors.  The only parties who needed the security were the creditors, whose interests CHANDLER was employed to protect. CHANDLER negotiated the security provision on behalf of the creditors, and the security was for the benefit of no one but the creditors.  The only attorney involved whose clients had any interest in making sure the security was perfected was CHANDLER.

Moreover, the issue addressed by the Court concerned the scope of CHANDLER's duty to Appellants and whether he breached that duty. While the existence of an attorney's duty to a client is a question of law, whether the attorney breached that duty, and whether that breach caused damages, are questions of fact. *Starr v. Mooslin* (1971) 14 Cal.App.3d 988, 998. The Bankruptcy Court should not have addressed these factual questions on a Rule 12(b)(6) motion.

In *Starr v. Mooslin* an attorney was found liable for inadequately preparing escrow instructions that allowed the purchaser of real property to subordinate the purchase money loan to other financing. The defendant attorney argued that he should not be held liable because it was the escrow company that allowed the subordination, not him. The court rejected that argument, pointing out that the attorney had to take affirmative steps to protect his client's interests even if there was some third party who had to perform the necessary action:

> In these circumstances it is understandable that defendant and his trial counsel based their defense entirely upon the contention that it was not the conceded deficiencies in the escrow instructions prepared by defendant, but rather it was the mistake or misconduct of the ... escrow agent, which constituted the proximate cause of plaintiff's loss. The only possible basis upon which defendant could claim freedom from negligence was his contention that he had justifiably relied upon an asserted custom and practice among escrow agents which the [escrow agent] violated when it delivered the two deeds of trust for recordation. This contention necessarily implies that defendant contemplated the taking of further unspecified steps to protect his client's interests prior to the closing of the escrow.

*(Id.* at 1000-1001.)

Similarly here, it is no excuse for CHANDLER to say he cannot be held liable because it was someone else's job to physically record the security for Premier's purchase money note, which security was the only protection to ensure payment to the unsecured creditors. As in *Starr v. Mooslin*, this defense "necessarily implies that defendant contemplated the taking of further unspecified steps to protect his client's interest." Obviously, CHANDLER failed to take such steps.

Whether CHANDLER took the actions he should have is a factual question for the trier of fact. (*Ibid.*)  The Bankruptcy Court should not have decided this question of fact on a motion to dismiss under Rule 12(b)(6).  *See, e.g., Allison v. California Adult Authority*, 419 F.2d 822, 823 (9th Cir. 1969).

The Bankruptcy Court's other reason for finding no duty on CHANDLER's part was that it would discourage attorneys from representing creditors' committees.  (Memorandum on Motion to Dismiss, 3:17-26, Doc # 3-17.)  While an attorney representing a creditors' committee may be a "blessing to the court", this is not a basis for concluding CHANDLER did not owe a duty to Appellants.  The Court's reasoning is undercut by the fact that, had CHANDLER's malpractice been known and the issue raised when he applied for fees the Court would have been obligated to address the issue.  *See Grausz v. Englander*, 321 F.3d 467 (4th Cir. 2003).  CHANDLER should not escape liability merely on the happen-stance that his negligence was not discovered until after his fee application had been approved.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Bankruptcy Court's ruling on Appellants' motion to remand be reversed and this action remanded to state court.  In the event, this Court finds there is a basis to assume jurisdiction, Appellants respectfully request that the Bankruptcy Court's order granting CHANDLER's motion to dismiss be reversed.

Dated: November ___, 2011

_____
PAUL A. FRASSETTO
Attorney for Appellants
RICHARD K. SHULTZE, LORENZO V. ZUNINO,
ROBERT BECCHETTI and RICHARD QUESTONI