1  James A. Murphy – 062223
   Arthur J. Harris – 246986
2  MURPHY, PEARSON, BRADLEY & FEENEY
   88 Kearny Street, 10th Floor
3  San Francisco, CA  94108-5530
   Tel:    (415) 788-1900
4  Fax:    (415) 393-8087

5  Attorneys for Appellees
   DAVID N. CHANDLER AND DAVID N. CHANDLER, P.C.

6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 DAVID N. CHANDLER, SR.,                      Case No.: 11-04940
   DAVID N. CHANDLER, P.C.,                     A.P. No.:  11-1118
12
            Plaintiff,                          **RESPONDENTS DAVID N.**
13                                              **CHANDLER, SR., DAVID N.**
   v.                                           **CHANDLER, P.C.'S OPENING BRIEF**
14
   RICHARD K. SCHULTZE,
15 LORENZO V. ZUNINO,
   ROBERT BECCETTI,
16 RICHARD QUESTONI,

17          Defendants.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   STATEMENT OF JURISDICTION ........................................................................ 2

    A.   Basis of Jurisdiction in the District Court. ............................................. 2

    B.   Basis of Jurisdiction in the Court of Appeals. ...................................... 2

II.  STATEMENT OF THE ISSUES ......................................................................... 3

III. STATEMENT OF THE CASE ........................................................................... 3

IV.  FACTUAL BACKGROUND .............................................................................. 4

V.   LEGAL ARGUMENT ...................................................................................... 6

    A.   Standard of Review .............................................................................. 6

    B.   The Bankruptcy Court Properly Assumed Jurisdiction Over APPELLANTS'
        Malpractice Action ............................................................................... 6

        1.   APPELLANTS' Legal Malpractice Complaint Is A Core Proceeding ............... 6

            a.   APPELLANTS' malpractice claims are based on post-petition
                conduct. ....................................................................................... 7

            b.   APPELLEES' allegedly negligent conduct is inextricably
                intertwined with the Debtor's Chapter 11 case. ....................... 8

            c.   APPELLEES' allegedly negligent conduct occurred post-
                confirmation in connection with implementation of the
                Bankruptcy plan by the Debtor in Possession. ...................... 11

        2.   APPELLANTS' Legal Malpractice Action Was Properly Heard By The
            Bankruptcy Court Because It Was "Related To" The Chapter 11 Case. .......... 14

        3.   Abstention From Hearing The Malpractice Action By The Bankruptcy
            Court Would Have Resulted In An Inappropriate Waste Of Judicial
            Resources. ............................................................................................ 15

    C.   The Bankruptcy Court Properly Dismissed APPELLANTS' Meritless
        Malpractice Complaint ........................................................................ 16

        1.   Standard for Motion to Dismiss. ..................................................... 16

        2.   APPELLANTS Lacked Standing To Pursue A Claim Against
            APPELLEES Because APPELLANTS, In Their Individual Capacities,
            Did Not Have An Attorney-Client Relationship With APPELLEES. ............. 17

        3.   APPELLANTS' Claims Are Barred By Issue Preclusion. ................... 19

        4.   APPELLEES Owed No Duty To Act With Respect To Implementation
            Of The Plan Absent Terms Of The Plan, Which Expressly Provides
            Otherwise. ........................................................................................... 19

        5.   APPELLEES Are Protected From APPELLANTS' Legal Malpractice
            Allegations By The Doctrine Of Quasi-Judicial Immunity. ................... 21

        6.   APPELLANTS Suffered No Loss Or Damage. .................................. 24

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3    VI.    CONCLUSION .................................................................................................................25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONDENTS DAVID N. CHANDLER, SR.,                                          Case No.: 05-12180
DAVID N. CHANDLER, P.C.'S OPENING BRIEF                                      A.P. No.:  11-1118

1

## TABLE OF AUTHORITIES

2
Page

3

### Cases

4 *Antoine v. Byers & Anderson, Inc.*,
508 US 429 (1993).........................................................................................................21

5

6 *Ascon Properties, Inc. v. Mobil Oil Co.*
866 F.2d 1149 (9th Cir. 1989)........................................................................................17

7 *Atkinson-Baker & Assocs., Inc. v. Kolts*,
7 F.3d 1452 (9th Cir. 1993).............................................................................................21

8

9 *Aulson v. Blanchard*,
83 F.3d 1 (1st Cir. 1996)...................................................................................................6

10

11 *Azanor v. Ashcroft*,
364 F.3d 1013 (9th Cir. 2004).........................................................................................17

12 *Baker v. Simpson*
(E.D. N.Y. 2009) 413 B.R. 38....................................................................................9, 10

13

14 *Baker v. Simpson*,
613 F.3d 346 (2nd Cir. 2010)............................................................................................4

15 *Balistreri v. Pacifica Police Department*,
901 F.2d 696 (9th Cir.1990)...........................................................................................16

16

17 *Bankr. Servs., Inc. v. Ernst & Young*
(2d Cir. 2008) 529 F.3d 432........................................................................................6, 7

18

19 *Billing v. Ravin, Greenberg & Zackin, P.A.*,
22 F.3d 1242 (3d Cir.1994).......................................................................................12, 13

20 *Boone v. Redevelopment Agency of San Jose*,
(1988) 841 F.2d 886 (9th Cir.), cert. denied, 488 U.S. 965 ...........................................6

21

22 *Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994)............................................................................................17

23

24 *Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*,
574 F.Supp.3d 143 (D.D.C. 2008) .................................................................................19

25

26 *Coverdell v. Dept. of Social & Health Services*,
834 F.2d 758 (9th Cir.1987)...........................................................................................22

27 *DCD Programs, Ltd. v. Leighton*
833 F.2d 183 (9th Cir. 1981)..........................................................................................17

28

- iii -

# TABLE OF AUTHORITIES
(continued)

Page

*Grausz v. Englander*
  (4th Cir. 2003) 321 F.3d 467.............................................................10, 12, 13

*Grier v. Brown*
  230 F.Supp.2d 1108 (N.D. Cal. 2002) ...................................................16, 17

*Hahn v. Codding,*
  615 F.2d 830 (9th Cir.1980)...........................................................................6

*Holden v. Hagopian,*
  978 F.2d 1115 (9th Cir. 1992).......................................................................6

*Howard v. Drapkin,*
  222 Cal.App.3d 843 (1990).................................................................21, 22, 23

*In re A.H. Robins Co.,*
  86 F.3d 364 (4th Cir. 1996).........................................................................11

*In re ACI-HDT Supply Co.*
  (B.A.P. 9th Cir. 1997) 205 B.R. 231............................................................7

*In re Billing*
  (D.N.J. 1993) 150 Bankr. 563.......................................................................8

*In re Castillo,*
  297 F.3d 940 (9th Cir. 2002).......................................................................21

*In re Cedar Funding, Inc.,*
  419 BR 807 (9th Cir. BAP 2009)................................................................21

*In re Com 21,*
  2005 WL 1606357*7 (N.D. Cal. 2005) .......................................................4

*In re D.H. Overmeyer Telecasting Co., Inc.,*
  47 B.R. 823 (Bktcy. Ohio 1985) ................................................................18

*In re DeLorean Motor Co.*
  (9th Cir. BAP 1993) 155 B.R. 521..............................................................9

*In re DeLorean Motor Co.,*
  991 F.2d 1236 (6th Cir. 1993).......................................................................6

*In re Diversified Contract Services, Inc.*
  (Bktcy. N.D. CA 1994) 167 B.R. 591.......................................................8, 9

*In re Drexel Burnham Lambert Group, Inc.,*
  138 B.R. 717 (Bktcy. S.D.N.Y.1992) .......................................................19

- iv -

# TABLE OF AUTHORITIES
(continued)

Page

*In re Eastport*
(9th Cir. 1991) 935 F.2d 1071................................................................................7

*In re Ferrante*
(9th Cir. 1995) 51 F.3d 1473...............................................................................13

*In re Fietz*
(9th Cir.1988) 852 F.2d 455................................................................................14

*In re Harris Pine Mills*
(9th Cir. 1995) 44 F.3d 1431................................................................................7

*In re Iannochino,*
242 F. 3d 36 (1st Cir. 2001)...............................................................................19

*In re J.F.D. Enterprises, Inc.,*
223 B.R. 610 (Bktcy.D.Mass. 1998)...................................................................18

*In re Lighthouse Lodge, LLC,*
2010 WL 4053984 (Bktcy.N.D.Cal.2010)..........................................................21

*In re Mesta Mach. Co.,*
67 B.R. 151 (Bktch.W.D.Pa. 1986) ...................................................................19

*In re Resorts Intern., Inc.*
(2004) 372 F.3d 154...........................................................................................12

*In re Wood*
(5th Cir.1987) 825 F.2d 90.................................................................................14

*Kingman Reef Atoll Invs., L.L.C. v. United States,*
541 F.3d 1189 (9th Cir.2008).............................................................................6

*Leveto v. Lapina,*
258 F.3d 156 (3rd Cir. 2001) .............................................................................21

*Lorence v. Does 1 Through 50*
(Bankr. N.D. Cal. 1994) 167 B.R. 591...............................................................15

*Luan Inv. S.E. v. Franklin 145 Corp.*
(2d Cir. 2002) 304 F.3d 223.................................................................................7

*Maitland v. Mitchell*
(9th Cir. 1995) 44 F.3d 1431..............................................................................10

*Matter of Levy*
(Bktcy. N.Y. 1985) 54 B.R. 805.........................................................................18

- v -

# TABLE OF AUTHORITIES
(continued)

**Page**

*Matter of Southmark Corp.,*
   163 F.3d 925 (5th Cir.1999)..................................................................................4, 12, 13

*Matter of Stockert Flying Service, Inc.*
   (Bankr. N.D. Ind. 1987) 74 Bankr. 704 .................................................................15, 16

*McKenna v. Wright,*
   386 F.3d 432 (2nd Cir. 2004).........................................................................................21

*Mendoza v. Zirkle Fruit Co.*
   02 C.D.O.S. 8040 ..............................................................................................................2

*MGIC Indem. Corp. v. Weisman,*
   803 F.2d 500 (9th Cir. 1986).........................................................................................17

*Mir v. Fosburg,*
   646 F.2d 342 (9th Cir. 1980).........................................................................................17

*Mosher v. Saalfeld,*
   589 F.2d 438 (9th Cir.1978), cert. den. 442 U.S. 941 (1979)........................................22

*Murphy & Co., Inc., et al. v. First National Bank of Sparta, et al.*
   (Bankr. S.D. Miss. 1997) 213 B.R. 813 ........................................................................13

*Myers v. Morris,*
   810 F.2d 1437 (8th Cir.1987), cert. den. 484 U.S. 828 .................................................22

*New Alaska Development Corp. v. Guetschow,*
   869 F.2d 1298 (9th Cir.1989).........................................................................................22

*Pacor, Inc. v. Higgins*
   (3d Cir.1984) 743 F.2d 984 ...........................................................................................14

*Pan Am Corp. v. Delta Air Lines, Inc.,*
   175 B.R. 438 (Bktcy. S.D.N.Y. 1994) ..........................................................................21

*Raygor v. Regents of the University of Minnesota,*
   534 U.S. 533, 122 S. Ct. 999 (2002)................................................................................2

*Regan v. Price,*
   131 Cal.App.4th 1491 (2005) ........................................................................................21

*Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*
   (6th Cir. 1992) 973 F.2d 474..........................................................................................13

*Sec. Farms v. Int'l Bhd. of Teamsters*
   (9th Cir.1997) 124 F.3d 999...........................................................................................14

- vi -

RESPONDENTS DAVID N. CHANDLER, SR.,
DAVID N. CHANDLER, P.C.'S OPENING BRIEF

Case No.: 05-12180
A.P. No.: 11-1118

1

**TABLE OF AUTHORITIES**
(continued)

2
**Page**

3
*Simmons v. Johnson, Gurney & Fields, P.C., et al.*
    (Bankr. W.D. Tex. 1997) 205 B.R. 834 ..................................................13
4

5
*State of Alaska v. Babbitt,*
    38 F.3d 1068 (9th Cir.1994)...................................................................6
6

*United Mine Workers v. Gibbs*
7
    (1966) 383 U.S. 715 ..............................................................................15

8
*United States v. Gaubert,*
    499 U.S. 315, 111 S.Ct. 1267 (1991)....................................................21
9

10
*Walsh v. Northwestern National Ins. Co.,*
    51 F.3d 1473 (9th Cir. 1995)...........................................................4, 13
11

*Western Mining Council v. Watt,*
12
    643 F.2d 618 (9th Cir. 1981)..................................................................6

13

14
**Statutes**
Bankruptcy Code
15
    § 1103(c) ..............................................................................................19

16
Commercial Code
    § 9509(b) ..............................................................................................20
17
    § 9510....................................................................................................20
    § 9625(b) ..............................................................................................20
18
    § 9625(e)(1)...........................................................................................20

19
United States Code
20
    11 U.S.C. § 321 .....................................................................................12
    11 U.S.C. § 322 .....................................................................................12
21
    11 U.S.C. § 324 .....................................................................................12
    11 U.S.C. §§ 326-331.............................................................................12
22
    11 U.S.C. § 1103 ...................................................................................19
    11 U.S.C. § 1103(b)...............................................................................18
23
    11 U.S.C. § 1104 ...................................................................................19
24
    28 U.S.C. § 157 ..................................................................................7, 9
    28 U.S.C. § 157(b)(2).............................................................................7
25
    28 U.S.C. § 157(b)(2)(A)...............................................................7, 8, 18
    28 U.S.C. § 157(b)(2)(O)...............................................................7, 8, 18
26
    28 U.S.C. § 157(b)(3).............................................................................7
    28 U.S.C. § 1291 ...................................................................................2
27
    28 U.S.C. § 1331 ...................................................................................2
28
    28 U.S.C. § 1334(b)...........................................................................6, 14

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

28 U.S.C. § 1367 ................................................................................................14
28 U.S.C. § 1367(a) ............................................................................................2

4

United States Code Annotated
5
28 U.S.C.A. § 1334(c)(1) ..........................................................................10, 15

6

7

**Rules**

Federal Rules of Civil Procedure
8
Rule 12(b) ........................................................................................................16
9
Rule 12(b)(6) ...................................................................................................16
Rule 56 .............................................................................................................16
10

11

**Treatises**

12
7 Collier on Bankruptcy (15th ed. rev. 1996)
¶ 1103.03 .........................................................................................................18

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

RICHARD K. SCHULTZE, LORENZO V. ZUNINO, ROBERT BECCETTI, and RICHARD QUESTONI'S (collectively "APPELLANTS") Appeal of the district court's orders removing the case to United States Bankruptcy Court and subsequently dismissing the case altogether is without merit.

First, APPELLANTS contend that their legal malpractice action is neither a core proceeding nor remotely "related to" the action entitled *In Re Colusa Mushroom, Inc.,* Northern District of California Case No. 05-12180 ("Debtor's Chapter 11 case") because their claims involve rights existing exclusively under state law, not bankruptcy law. This contention is meritless.

The malpractice action seeks to recover monetary damages from DAVID N. CHANDLER and DAVID N. CHANDLER, P.C. (collectively "APPELLEES") for legal services provided in the Debtor's Chapter 11 case as court-appointed counsel for the Unsecured Creditors' Committee.[1] Notably, APPELLEES represented the Unsecured Creditors' Committee only, and never represented any of the APPELLANTS in their individual capacities. The claims (and sought after remedies), if any exist, belong to the Unsecured Creditors' Committee as a whole. Thus, the professional negligence action is a core proceeding because if APPELLANTS prevail the recovered damages must be dispersed equally to the entire Unsecured Creditors' Committee and not just these four individual APPELLANTS. Moreover, this is a core proceeding because it involves claims clearly arising out of a court-appointed professional's services provided during the pending bankruptcy proceedings and effecting the administration of those proceedings.

The legal malpractice action is also related to the Debtor's Chapter 11 case given that APPELLANTS' claims arise out of the same operative facts as the bankruptcy action and concern the administration of the proceedings. Thus, judicial economy demanded that the malpractice action be removed to the Bankruptcy Court, and heard by the judge who both appointed APPELLEES as counsel for the Unsecured Creditors' Committee and had intimate knowledge of the alleged conduct that was the basis for the malpractice allegations. APPELLANTS' motion seeking the Court to abstain from removing the malpractice action or to remand the action back to the state court was, therefore, properly

---

[1] APPELLANTS along with two other individuals and one business entity were the members of the Unsecured Creditor's Committee. (Complaint for Malpractice at prgh. 6)

- 1 -

removing the malpractice action or to remand the action back to the state court was, therefore, properly denied by the Bankruptcy Court in its entirety.

Second, APPELLANTS have not identified, nor can they, any precedent establishing that APPELLEES owed a duty to APPELLANTS where APPELLEES were court-appointed counsel for the Committee only. Stated another way, APPELLANTS, in their individual capacities, lack standing to sue APPELLEES who were duly appointed counsel for the Committee. No attorney-client relationship existed between APPELLANTS and APPELLEES to confer such a duty. Moreover, while not reached by the Bankruptcy Court in its ruling, APPELLANTS are barred from asserting the legal malpractice claims based upon both claim preclusion and quasi-judicial immunity. Under California law, non-judicial persons who fulfill functions integral to the judicial process are accorded quasi-judicial immunity from damage claims arising from their performance of duties in connection with the judicial process. California courts have extended this immunity to protect individuals, such as therapists, guardians ad litem, and court-appointed attorneys. Under these circumstances, the court-appointed attorney acts pursuant to a court order and functions as an extension of the court. Thus, APPELLEES represented the Committee, but never represented any individual creditor's interest in the case because they were appointed to represent the entire unsecured creditor class only. As the court-appointed counsel for the Committee, APPELLEES were intimately connected to the judicial process, and therefore are entitled to absolute quasi-judicial immunity.

Accordingly, the Bankruptcy Court's orders were sound and should be affirmed on appeal.

## I.   STATEMENT OF JURISDICTION

**A.   Basis of Jurisdiction in the District Court.**

The District Court has original jurisdiction over the federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over (allegedly) state law claims under 28 U.S.C. § 1367(a), (*Mendoza v. Zirkle Fruit Co.* 02 C.D.O.S. 8040, 8043 citing *Raygor v. Regents of the University of Minnesota*, 534 U.S. 533, 122 S. Ct. 999, 1004 (2002).

**B.   Basis of Jurisdiction in the Court of Appeals.**

The Court of Appeal has jurisdiction pursuant to 28 U.S.C. § 1291. The Order of dismissal was entered on September 26, 2011.

- 2 -

## II.   STATEMENT OF THE ISSUES

1. Were the APPELLANTS' legal malpractice claims "core" or "related to" the Debtor's Chapter 11 case so as to give the Bankruptcy Court jurisdiction over the proceedings?

2. Did APPELLANTS, individually, have standing to sue APPELLEES, who were appointed by the Bankruptcy Court solely as counsel for the Unsecured Creditors' Committee?

3. Did APPELLEES owe APPELLANTS, in their individual capacities, a duty of care?

4. Are APPELLANTS' malpractice claims precluded by their failure to raise them at the time of APPELLEES' application for compensation?

5. Were APPELLEES afforded quasi-judicial immunity for any service provided in connection with the administration of the case?

6. Did APPELLANTS suffer nonspeculative damages as a result of APPELLEES' allegedly negligent legal services?

## III.   STATEMENT OF THE CASE

APPELLANTS filed suit against APPELLEES in the Superior Court of Sonoma County alleging that APPELLEES had a duty to "insure" that the counsel for the Debtor, as part of a sale of a business, actually filed the junior priority financing statement and the filing had been accomplished. APPELLANTS' allege that the individual claims of such members would have been secured by collateral pledged by the Buyer. Proper perfection allegedly would have resulted in a lien securing any claim of the APPELLANTS herein. Notably, the failure to file the financing statement was solely the result of the acts or omissions of the Debtor's counsel and not the Committee counsel, APPELLEES herein.

On April 8, 2011, APPELLEES filed a Notice of Removal seeking to remove the action to Bankruptcy Court because the malpractice was a core proceeding. Doc. #1. On May 4, 2011, APPELLANTS filed a lengthy Motion to Remand the action back to state court based on an objection to the Bankruptcy Court's jurisdiction. Doc. #3. On June 9, 2011, the Honorable Judge Alan Jaroslovsky denied APPELLANTS' motion to remand opining as follows:

> Plaintiff's central position, that the federal courts have no jurisdiction over this matter, is without any basis in the law. If a malpractice action is directed against a professional appointed by a bankruptcy court, there is

-3-

Case No.: 05-12180
A.P. No.: 11-1118

federal jurisdiction over the matter and it is treated as a core proceeding. *Walsh v. Northwestern National Ins. Co.*, 51 F.3d 1473, 1476 (9th Cir. 1995); *Baker v. Simpson*, 613 F.3d 346, 350 (2nd Cir. 2010); *Matter of Southmark Corp.*, 163 F.3d 925, 932 (5th Cir.1999). *In re Com 21*, 2005 WL 1606357*7 (N.D. Cal. 2005)["the court concludes that the malpractice action by the trustee against bankruptcy counsel for the debtor-in-possession is a core proceeding and subject to the jurisdiction of the bankruptcy court with respect to both disgorgement and damages."] In such cases, the malpractice claims are inseparable from the bankruptcy context. *Southmark*, 163 F.3d at 931.

The Official Creditors Committee is strictly a creation of a federal statute. The liability of court-appointed counsel to the committee or its members is an issue which, by its very nature, can only arise in a bankruptcy context. The federal courts have a compelling interest in insuring that counsel are not discouraged from representing creditors committees for fear of unreasonable liability, especially when their compensation has already been subject to federal adjudication. Accordingly, plaintiffs' motion to remand for lack of jurisdiction will be denied. *See* Memorandum re Jurisdiction at 2:5-19, Doc. #8.

Subsequently, on July 22, 2011, APPELLEES filed a Motion to Dismiss and/or For Summary Adjudication. On September 26, 2011, the Court granted the motion finding, among other things, that APPELLEES were not APPELLANTS'S lawyers, APPELLEES did not owe a duty of care to APPELLANTS, APPELLEES had no obligation to perfect the security interest, and APPELLEES had no obligation to discover the alleged negligence of Debtor's counsel. *See* Memorandum on Motion to Dismiss, Doc. #23.

APPELLANTS' present appeal followed shortly thereafter.

## IV.    FACTUAL BACKGROUND

The Chapter 11 case was commenced on August 22, 2005, by voluntary petition filed pursuant to Chapter 11 of the Bankruptcy Code. *See* Declaration of David N. Chandler ("Chandler Decl.") at prgh. 3a., Doc. #12. APPELLANTS were named by the Office of the U.S. Trustee, together with Don Frati, as the Official Unsecured Creditors' Committee formed by Order of this Court. *Id.* at prgh. 3b., Doc. #12. RICHARD SCHULTZE was named as chairman of the Committee. *Id.* at prgh. 3c., Doc. #12. As chairman, RICHARD SCHULTZE on behalf of the Committee executed an Application for permission to employ APPELLEES as counsel for the Committee. *Id.*

By Order of this Court, the Committee was given the permission to employ such counsel. *Id.* at prgh. 3d., Doc. #12. Plan of Reorganization terms were negotiated with the Debtor by the Committee,

RESPONDENTS DAVID N. CHANDLER, SR.,
DAVID N. CHANDLER, P.C.'S OPENING BRIEF

Case No.: 05-12180
A.P. No.: 11-1118

1   with the assistance of counsel.  The confirmed Plan was for the sale of a business to a third party.
2   Specifically, the confirmed Plan provided for the sale of certain assets of the estate pursuant to §363 of
3   Title 11.  Pursuant to the confirmed Plan, an agreement between Aldo Baccala as "buyer" and Debtor
4   as "seller" was entered into.  The sales price was agreed to be paid in cash and a promissory note.  The
5   note was to be secured by a Deed of Trust describing a leasehold and a second priority lien on personal
6   property junior to liens in favor of Tri-Counties Bank ($709,623 Claim No. 28-1), Leaf Financial
7   ($509,496 Claim No. 23-1) and Allegiant ($225,000 Claim No. 21-1).  *Id* at prghs. 3h , 5 and 6., Doc.
8   #12.  The Debtor was to retain a security interest in the assets sold junior to that of existing liens.
9   Closing was to be through an established escrow.  *Id.*  The Committee agreed that the security interest
10  would be subordinated to new financing in favor of Sacramento Valley Farm Credit ("SVFC"),
11  however, such provision was not included by the Debtor in the terms of the Second Amended Plan or
12  Order of Confirmation.  *Id.* at prghs. 3h , 5, 6, and 11, Doc. #12.  Regardless, APPELLANTS'
13  "interest" was never secured, it was at all times an unsecured debt.

14      Following confirmation of the Plan, the Buyer and the Debtor agreed to use their respective
15  counsel for purposes of closing escrow on the sale rather than Fidelity Title as provided in the
16  confirmed Plan.  *Id.*  Counsel for Debtor was provided the funds required to close, the executed note,
17  Deed of Trust, personal property security agreement and financing statement.  At closing, counsel for
18  buyer was provided an executed Bill of Sale and Deed as required by the confirmed Plan.  Counsel for
19  Debtor failed to file the financing statement despite his assurance to APPELLEES for the Committee
20  that same had been done.

21      Application for Compensation for APPELLEES for the Committee was filed, heard and
22  allowed.  *Id* at prghs. 3i and 3j., Doc. #12.  There was no opposition to allowance of compensation on
23  the basis of any alleged failure of APPELLEES to file the financing statement.  *Id.*  No objections to
24  APPELLEES' compensation were raised by any party, including the APPELLANTS.  *Id.*

25      The buyer paid the initial installments as provided by the terms of the note, but defaulted when
26  the remaining balance became due.  Buyer apparently has had its own financial difficulties and was the
27  subject of an involuntary petition filed in the Eastern District (Bk. No. 09-41478) which was ultimately
28  dismissed.

RESPONDENTS DAVID N. CHANDLER, SR.,                          Case No.: 05-12180
DAVID N. CHANDLER, P.C.'S OPENING BRIEF                      A.P. No.: 11-1118

# V.   LEGAL ARGUMENT

## A.   Standard of Review

"Subject matter jurisdiction determinations are subject to *de novo* review." *State of Alaska v. Babbitt*, 38 F.3d 1068, 1072 (9th Cir.1994).   "A district court's findings of fact relevant to its determination of subject matter jurisdiction are reviewed for clear error." *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir.2008).

Further, Appellate Court's generally review *de novo* a district court's grant of a motion to dismiss.  *Boone v. Redevelopment Agency of San Jose*, (1988) 841 F.2d 886, 889 (9th Cir.), cert. denied, 488 U.S. 965.  Normally the court accepts as true all of the plaintiff's factual allegations, along with all reasonable inferences in the plaintiff's favor. *Hahn v. Codding*, 615 F.2d 830, 840 (9th Cir.1980).

However, a court need not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); see also *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992); see also *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  In other words, the court does not need to "swallow the Appellant's invective hook, line, and sinker."  *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## B.   The Bankruptcy Court Properly Assumed Jurisdiction Over APPELLANTS' Malpractice Action

### 1.   APPELLANTS' Legal Malpractice Complaint Is A Core Proceeding.

A bankruptcy court has jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C. § 1334(b).  "A bankruptcy court's power to enter appropriate orders and judgments in a given bankruptcy proceeding...hinges on whether the proceeding is 'core' or 'related,' consistent with [] constitutional limits."  [citations omitted.]  *Bankr. Servs., Inc. v. Ernst & Young* (2d Cir. 2008) 529 F.3d 432, 460.  Proceedings "arising in" bankruptcy cases are generally referred to as "core" proceedings, and essentially are proceedings that would not exist outside of bankruptcy, such as "matters concerning the administration of the estate," "orders to turn over property of the estate," and "proceedings to determine, avoid, or recover preferences."  28 U.S.C.

RESPONDENTS DAVID N. CHANDLER, SR.,
DAVID N. CHANDLER, P.C.'S OPENING BRIEF

Case No.: 05-12180
A.P. No.: 11-1118

§ 157(b)(2); see also *In re Harris Pine Mills* (9th Cir. 1995) 44 F.3d 1431, 1435-37; *Cent. Vt. Pub. Serv. Corp. v. Herbert* (2d Cir. 2003) 341 F.3d 186, 190.

A non-exhaustive definition is set forth in 28 U.S.C. § 157(b)(2), which specifies, *inter alia*, that the bankruptcy court possesses core jurisdiction with respect to "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). This provision is *broadly* construed. "In crafting § 157, Congress realized that the bankruptcy court's jurisdictional reach was essential to the efficient administration of bankruptcy proceedings and *intended that the 'core' jurisdiction be construed as broadly as possible* subject to [] constitutional limitations." [emphasis added.] *Bankr. Servs., Inc. v. Ernst & Young*, supra at 460; see also *Luan Inv. S.E. v. Franklin 145 Corp.* (2d Cir. 2002) 304 F.3d 223, 228–29.

Of the fifteen (15) provisions set forth in 28 U.S.C. § 157(b)(2), two, (A) and (O), are considered "catch-all" categories. "[C]ore jurisdiction statutorily includes matters concerning the administration of the estate, 28 U.S.C. § 157(b)(2)(A) and other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . .relationship . . ." [internal citations and quotations omitted]. 28 U.S.C. § 157(b)(2)(O); *In re Southmark Corp.* (5th Cir. 1999) 163 F.3d 925, 930. The Ninth Circuit has defined core proceedings to include administrative matters that arise only in bankruptcy and would have no existence outside of the bankruptcy. *Harris Pine Mills*, 44 F.3d 1435; *In re Eastport* (9th Cir. 1991) 935 F.2d 1071, 1076.

### a. APPELLANTS' malpractice claims are based on post-petition conduct.

APPELLANTS argued that the malpractice claims are not core proceedings because they are not based on any right created by the federal bankruptcy law, but, instead, are based exclusively on rights existing under state law. This distinction, however, is not determinative as Section 157 provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

Regardless, actions based upon post-petition conduct connected with a bankruptcy proceeding are core proceedings. Cf. *In re ACI-HDT Supply Co.* (B.A.P. 9th Cir. 1997) 205 B.R. 231, 237 [finding the claims to be non-core, inter alia, because the actions against non-debtor parties were for conduct arising prepetition]. Here, there can be no dispute that the bankruptcy action was reopened,

1   and the actions giving rise to the alleged state law claims for malpractice occurred post-petition as

2   APPELLEES allegedly failed to secure the promissory note *after* they were appointed as counsel for

3   APPELLANTS by the Bankruptcy Court.  Accordingly, the Bankruptcy Court properly exercised its

4   jurisdiction over the malpractice action by removing it to district court.

5           **b.      APPELLEES' allegedly negligent conduct is inextricably intertwined with**
            **the Debtor's Chapter 11 case.**

6

7           Three key factors are undisputed: (1) APPELLEES were appointed as counsel of record for the

8   Committee by the Bankruptcy Court, (2) but for the Debtor's Chapter 11 case, there would be no

9   connection between APPELLANTS and APPELLEES, whatsoever, and (3) the sale of the Debtor's

10  assets under the Plan and pursuant to § 363 would never have occurred absent the bankruptcy case.

11  Hence, the Debtor's Chapter 11 case is the *sine qua non* of the action by APPELLANTS against

12  APPELLEES and, therefore, a core proceeding properly before the Bankruptcy Court.

13          The case of *In re Billing* (D.N.J. 1993) 150 Bankr. 563, points out that the Ninth Circuit has a

14  narrow interpretation of the catch all provisions of U.S.C. § 157(b)(2)(A) and (O).  However, *Billing*

15  states further that a legal malpractice action "is a core matter concerning the administration of the

16  estate which relates to the very heart of the bankruptcy process, even if the catch all provision of 28

17  U.S.C. § 157(b)(2)(A) is read narrowly." *Id.* at 566.  Specifically, in *Billing*, a district court grappled

18  with whether a post-confirmation malpractice claim against debtor's former bankruptcy attorneys

19  provided the necessary "arising in" jurisdiction.  Although the court recognized that malpractice is a

20  claim that can arise outside of the bankruptcy court, the court concluded that "the allegations

21  supporting the claim in this case are entirely unique to the bankruptcy law..... Here, the bankruptcy

22  proceeding was obviously the *sine qua non* of the malpractice action." *Id.* at 566.  Stated another way,

23  "[a] bankruptcy court is best positioned to determine claims based upon an alleged breach of duty by

24  an attorney appointed by the bankruptcy court to represent a bankruptcy trustee." See *In re Diversified*

25  *Contract Services, Inc.* (Bktcy. N.D. CA 1994) 167 B.R. 591.

26          In *In re Diversified Contract Services, Inc.*, 167 B.R. 591 (N.D.Cal.1994), a bankruptcy court

27  had to address a claim brought by a chapter 11 trustee against her former bankruptcy attorney.  That

28  claim arose from a motion made by bankruptcy counsel to withdraw on grounds that the chapter 11

- 8 -

1    trustee had committed certain unethical and possibly criminal acts in connection with the management
2    of the case's bankruptcy estate.   One year later, the chapter 11 trustee sued her former bankruptcy
3    counsel in state court for negligence, breach of fiduciary duty, slander, fraud, tortious interference,
4    intentional inflection of emotional distress and abuse of process.   After the action had been removed to
5    bankruptcy court, the trustee asked the court to remand the case to state court, because, *inter alia*, the
6    court lacked subject matter jurisdiction.   The bankruptcy court did not agree.   The language "arising
7    in," it found, provided the necessary power to exercise jurisdiction because the legal representation
8    arose in connection with the bankruptcy case and, "[f]urthermore, the[ ] alleged breach of those
9    obligations was committed at and in connection with a hearing before the bankruptcy court.   It is
10   ludicrous to contend that such claims could arise outside a bankruptcy case." *Id.* at 595.

11        *In re DeLorean Motor Co.* (9th Cir. BAP 1993) 155 B.R. 521, the debtor's counsel filed a state
12   court malicious prosecution action against the Chapter 7 trustee, counsel for the trustee, and the
13   chairman of the creditors' committee.   The suit was based on the resolution of a lawsuit in the debtor's
14   counsel's favor, wherein the trustee had alleged that the debtor had fraudulently conveyed property of
15   the estate to his counsel. The trustee removed the action to the bankruptcy court. Plaintiff dismissed the
16   trustee and moved that the bankruptcy court abstain and remand the action to the state court. The
17   bankruptcy court granted the motion.   *Id.* at 522.   On appeal, the appellate court reversed the
18   bankruptcy court, holding that the malicious prosecution suit was a core proceeding, notwithstanding
19   the fact that the trustee had been dismissed. *Id.* at 525. The appellate court reasoned that the malicious
20   prosecution action arose "from the efforts of officers of the estate to administer the estate and collect
21   its assets and therefore impacts the handling and administration of the estate," and that "it is
22   inextricably tied to the determination of an administrative claim against the estate and is similarly tied
23   to questions concerning the proper administration of the estate." *Id.*   According to the appellate court,
24   the suit, as against the trustee's counsel, was "essentially a suit against the trustee" and thus a core
25   proceeding under Section 157. *Id.*

26        Similarly, in *Baker v. Simpson* (E.D. N.Y. 2009) 413 B.R. 38, a Chapter 11 debtor brought suit
27   in state court against appointed counsel in the debtor's bankruptcy case for claims of legal malpractice
28   arising from counsel's advice and counsel during the bankruptcy proceedings.   The court dismissed the

1   debtor's appeal of the bankruptcy court's order denying the debtor's motion to remand the action to

2   state court, holding that discretionary abstention, pursuant to 28 U.S.C.A. § 1334(c)(1), was not

3   appropriate, where the debtor's causes of action turned largely on issues that were intertwined with his

4   bankruptcy, including the propriety of counsel's advice regarding his bankruptcy proceedings. The

5   court concluded that retention of federal jurisdiction would facilitate the efficient administration of the

6   estate, especially since consideration of the merits of the debtor's claims necessarily implicated a

7   review of the bankruptcy court's orders approving, authorizing, and supervising each of the actions at

8   issue in the debtor's malpractice claims. *Baker v. Simpson* (E.D. N.Y. 2009) 413 B.R. 38.

9         Here, the Bankruptcy Court properly found that where "a malpractice action is directed against

10   a professional appointed by a bankruptcy court, there is federal jurisdiction over the matter and it is

11   treated as a core proceeding." *See* Memorandum re Jurisdiction at 2:6-7, Doc. #8.  Thus, jurisdiction

12   existed as a direct result of APPELLEES' appointment as counsel for the Committee.

13         Furthermore, APPELLEES' representation of APPELLANTS, as part of the Unsecured

14   Creditor's Committee, falls within the Bankruptcy Court's core jurisdiction because, analogous to *In re*

15   *Diversified Contract Services, Inc.* and *Billing*, APPELLEES' alleged malpractice is inextricably

16   intertwined with the Debtor's Chapter 11 case so as place the Bankruptcy Court in the best position to

17   consider APPELLANTS' allegations.   Specifically, prior to the commencement of the Debtor's

18   Chapter 11 case, there was no connection between APPELLANTS and APPELLEES.  The purported

19   obligations that APPELLANTS claim the APPELLEES owed them on an individual basis arose, if at

20   all, in connection with the bankruptcy case; the alleged malpractice at issue cannot be understood apart

21   from, and is thus inextricably intertwined with, the bankruptcy proceedings.  Simply stated, absent the

22   bankruptcy, the malpractice claims would have never arisen.

23         Thus, the malpractice action is a core proceeding because the attorney malpractice claims are

24   not independent of the administration of the Debtor's Chapter 11 case. *Maitland v. Mitchell* (9th Cir.

25   1995) 44 F.3d 1431; *Grausz v. Englander* (4th Cir. 2003) 321 F.3d 467, 471-472 [the Fourth Circuit

26   held that its interpretation of "arising in" jurisdiction "surely means that jurisdiction exists over a

27   malpractice claim against a lawyer for providing negligent advice to a debtor in a bankruptcy case"].

28         The Bankruptcy Court is also best positioned to determine APPELLANTS' complaint because

- 10 -

resolution of the malpractice claims will involve substantial consideration of both substantive and procedural bankruptcy law, which are difficult and important.  As exemplar, the malpractice action will need to consider and resolve (1) the issue of a appointed bankruptcy counsel's ethical duty to the creditors' committee versus the alleged ethical duty to the individual creditors, (2) whether APPELLEES' post-confirmation legal services taken on behalf of the creditors' committee contravene the express terms of the reorganization plan, and (3) whether *res judicata* and/or qualified immunity precludes legal malpractice claims raised against appointed bankruptcy counsel after the bankruptcy court has approved the APPELLEES' compensation.  Furthermore, APPELLANTS do not contend that the state tort law upon which the malpractice claims are based is unsettled or complex.  So while state law may be implicated, it certainly does not predominate.  Regardless, in the event of a conflict between federal law and state law concerning APPELLEES' obligations in Debtor's Chapter 11 case, federal law does control.  Thus, it defies logic that a non-bankruptcy court, less acquainted with bankruptcy law and procedure, will be better able to address issues of alleged malpractice by a bankruptcy appointed attorney, than a bankruptcy court.

APPELLANTS' complaint alleges professional negligence claims that fall exclusively within the jurisdiction of, and are appropriately decided by, the bankruptcy court.  At the very least, where, as here, a reorganization plan creates an obligation and groups all creditors into an exclusive mechanism by which those claimants are to be satisfied out of that plan, then future disputes over the interpretation or enforcement of the plan fall into the bankruptcy court's "arising in" jurisdiction.  See, e.g., *In re A.H. Robins Co.*, 86 F.3d 364 (4th Cir. 1996).  Accordingly, the Bankruptcy Court properly found that remand or abstention from removing APPELLANTS' malpractice claims was inappropriate under the circumstances; APPELLANTS' motion for remand was properly denied.

        **c.**        **APPELLEES' allegedly negligent conduct occurred post-confirmation in connection with implementation of the Bankruptcy plan by the Debtor in Possession.**

The Plan was confirmed by Order of this Court entered on June 29, 2006.  ATTORNEY'S Application for Compensation was filed on July 24, 2006, heard and approved on September 1, 2006, and order entered approving same on December 12, 2006.  CREDITOR'S failed to raise the claims which they now assert despite the fact that such claims existed at the time of APPELLANTS'

- 11 -

compensation hearing.   Thus, the malpractice claims are barred by the Bankruptcy Court's order granting APPELLEES' application for compensation.  *Grausz v. Englander*, (4th Cir. 2003) 321 F.3d 467.

APPELLANTS' claims, like the claims in *In re Southmark Corp.* (5th Cir. 1999) 163 F.3d 925, arose in the context of plan implementation inasmuch as the alleged malpractice on which APPELLANTS predicate the claims occurred during the bankruptcy process.   Specifically, according to APPELLANTS, as a result of the allegedly negligent work that APPELLEES performed during the bankruptcy proceedings and its representations to the bankruptcy court, APPELLANTS did not receive the negotiated for terms of the bankruptcy plan.   APPELLANTS herein allege that APPELLEES failed to insure that counsel for the Debtor in Possession in connection with closing escrow on the sale perfected a second priority security interest against personal property collateral.     Therefore, APPELLEES' "alleged malpractice...implicated the integrity of the entire bankruptcy process" and the "alleged malpractice was inseparable from the bankruptcy context."   *In re Resorts Intern., Inc.* (2004) 372 F.3d 154, 163.   The Court of Appeals for the Fifth Circuit in *Southmark* explained why this type of misconduct and relationship to the bankruptcy court falls within the "arising in" jurisdiction (i.e., a core proceeding) of the federal courts:

> In this case, the professional malpractice claims alleged against [the defendants] are inseparable from the bankruptcy context. A sine qua non in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of Creditors'. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers of the debtor's estate are performing their work, conscientiously and cost-effectively. Bankruptcy Code provisions describe the basis for compensation, appointment and removal of court-appointed professionals, their conflict-of-interest standards, and the duties they must perform.   See generally 11 U.S.C. §§ 321, 322, 324, 326-331.     Although standards for the conduct of court-appointed professionals, the breach of which may constitute bankruptcy malpractice, are not comprehensively expressed in the statute, the Code need not duplicate relevant, also-applicable state law. It is evident that a court-appointed professional's dereliction of duty could transgress both explicit Code responsibilities and applicable professional malpractice standards. For instance, in *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242 (3d Cir.1994), the professional malpractice allegations included the Appellees' failure to comply with court orders and to submit a plan of reorganization to the bankruptcy court. Award of the

professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.

Supervising the court-appointed professionals also bears directly on the distribution of the debtor's estate. If the estate is not marshaled and liquidated or reorganized expeditiously, there will be far less money available to pay creditors' claims. Excessive professional fees or fees charged for mediocre or, worse, phantom work also cause the estate and the creditors to suffer...A malpractice claim like the present one [against court-appointed professionals] inevitably involves the nature of the services performed for the debtor's estate and the fees awarded under superintendence of the bankruptcy court; it cannot stand alone. (*In re Southmark Corp.* (5th Cir. 1999) 163 F.3d 925, 931.)

Other courts have also held that "professional malpractice claims against court-appointed professionals are indeed core matters." *Billing v. Ravin, Greenberg & Zackin, P.A.* (3d Cir.1994) 22 F.3d 1242, 1245, 1252-53 [while not directly addressing whether a legal malpractice suit against bankruptcy counsel constitutes a core proceeding as parties agreed that it does, we recognized that the "malpractice suit mirrors [debtor's] objections to the allowance of Appellees' fees," the resolution of which are within the bankruptcy court's "explicit jurisdiction to award fees for bankruptcy counsel and other supervisory powers as to bankruptcy counsel"]; *Walsh v. Northwestern National Insurance Co.* (9th Cir. 1995) 51 F.3d 1473, 1476; *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.* (6th Cir. 1992) 973 F.2d 474, 483 n. 4; *Grausz v. Englander* (4th Cir. 2003) 321 F.3d 467, 471 [finding that legal malpractice claim against firm for alleged misconduct in bankruptcy case is a claim "arising in" the bankruptcy case]; *In re Ferrante* (9th Cir. 1995) 51 F.3d 1473, 1476 [holding that action against trustee for misconduct in administering estate was a core proceeding concerning the administration of the bankruptcy estate]; see, e.g., *Simmons v. Johnson, Gurney & Fields, P.C., et al.* (Bankr. W.D. Tex. 1997) 205 B.R. 834, 841; *Murphy & Co., Inc., et al. v. First National Bank of Sparta, et al.* (Bankr. S.D. Miss. 1997) 213 B.R. 813, 816-817.

Accordingly, it is clear that a malpractice action against an attorney for misconduct during the bankruptcy on which the bankruptcy judge relied in confirming the plan, and in reliance on which the Bankruptcy Court approved the fees to the attorney, and on which APPELLANTS relied to their detriment, in a manner that contravenes the terms of the reorganization plan, constitutes a core proceeding that is subject to federal jurisdiction and the final adjudicative authority of the Bankruptcy Court.

Notably, because "arising in" core jurisdiction exists, the "close nexus" test does not apply, and the Court need not resolve the issue APPELLANTS raise relating to the applicability of the "close nexus" test in the "related to" post-confirmation context.   Nonetheless, APPELLEES have demonstrated below that, assuming *arguendo* the malpractice claims are non-core proceedings, they are "related to" the bankruptcy action and were therefore properly removed to Bankruptcy Court.

**2.      APPELLANTS' Legal Malpractice Action Was Properly Heard By The Bankruptcy Court Because It Was "Related To" The Chapter 11 Case.**

In addition to core proceedings, the bankruptcy court has jurisdiction over a much broader set of cases: those proceedings that are "related to" a bankruptcy case. The Ninth Circuit has adopted the "Pacor test" for determining the scope of "related to" jurisdiction. *In re Fietz* (9th Cir.1988) 852 F.2d 455, 457. Under this formulation, the test is whether:

> the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. *Id.* quoting *Pacor, Inc. v. Higgins* (3d Cir.1984) 743 F.2d 984, 994.

Moreover, bankruptcy courts have authority to exercise supplemental jurisdiction over even tangentially related claims.  Pursuant to 28 U.S.C. Section 1367, district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   The Ninth Circuit has applied Section 1367 to bankruptcy claims, even when the subject matter jurisdiction is based on "related to" bankruptcy jurisdiction.  See *Sec. Farms v. Int'l Bhd. of Teamsters* (9th Cir.1997) 124 F.3d 999, 1008 n. 5.

Here, the Debtor's Chapter 11 case was reopened and, at the time the notice of removal, jurisdiction existed because the dispute is "related to" the bankruptcy (28 U.S.C. § 1334(b)), that is, the outcome of the proceedings could conceivably have had an effect on the debtor's estate.  See generally *In re Wood* (5th Cir.1987) 825 F.2d 90, 93.  Additionally, APPELLANTS allege that APPELLEES' negligence and misrepresentations caused the assets of the estate under the responsibility of the Debtor

- 14 -

1  in Possession to be over-encumbered in a manner that was contrary to the court-approved Plan's
2  provisions.  Resolution of these malpractice claims will assuredly require interpretation of the scope of
3  APPELLEES', the Committee counsel, responsibility for implementation of the Plan and closing the
4  escrow, the scope of permissible activities of the Committee, the existence of the Committee at the
5  time of the alleged conduct, and the Plan itself.  APPELLANTS have also called into question the
6  integrity of the bankruptcy process given the fact that APPELLEES were appointed and supervised by
7  the Bankruptcy Court, and nothing is more germane or important to the integrity of the bankruptcy
8  process as it goes to the heart of the administration of a bankruptcy case.  Thus, judicial economy
9  demands that the malpractice claims be heard and resolved by the bankruptcy judge with intimate
10  knowledge of the alleged conduct that is the basis for the malpractice allegations.

11        Accordingly, APPELLANTS' malpractice claims have a sufficiently "close nexus" to the
12  bankruptcy proceeding to uphold "related to" jurisdiction because, at a minimum, the claims involve a
13  "common nucleus of operative facts" and would ordinarily be expected to be resolved in one judicial
14  proceeding. See *United Mine Workers v. Gibbs* (1966) 383 U.S. 715, 725.

15        **3.     Abstention From Hearing The Malpractice Action By The Bankruptcy Court**
16             **Would Have Resulted In An Inappropriate Waste Of Judicial Resources.**

17        APPELLANTS also requested for the court to abstain or remand the malpractice action
18  pursuant to 28 U.S.C. § 1334(c)(1).  Having already established that this matter is a core proceeding or
19  at least "related to" the bankruptcy action, abstention from removing the case would be *discretionary*
20  rather than mandatory.  *Matter of Stockert Flying Service, Inc.* (Bankr. N.D. Ind. 1987) 74 Bankr. 704,
21  707.   Under the circumstances, however, even discretionary abstention would be inappropriate.
22  Nothing about the malpractice action is tenuously or loosely related to the Debtor's Chapter 11 case.
23  On the contrary, but for the Debtor's chapter 11 case, there would be no connection between
24  APPELLANTS   and   APPELLEES.     Moreover,   APPELLEES'   actions   that   allegedly   damaged
25  APPELLANTS were "inextricably intertwined" with the administration of the Debtor's estate and
26  bankruptcy case.  As in the case of *Lorence v. Does 1 Through 50* (Bankr. N.D. Cal. 1994) 167 B.R.
27  591, 598, the bankruptcy judge is in the best position to determine claims of an appointed attorney's
28  breach of duty, particularly where he had approved the employment of APPELLEES for the benefit of

- 15 -

1    the Unsecured Creditor's Committee.

2          Moreover, in evaluating the factors for discretionary abstention, the state law based claims in

3    the malpractice action are neither complex nor predominate, whereas the bankruptcy issues are

4    somewhat complicated, unique and crucial to the dispute.  Thus, there is a clear overriding benefit to

5    the malpractice action being heard in the Bankruptcy Court: the history of the Debtor's Chapter 11

6    case, a judge who is intimately familiar with Debtor's Chapter 11 case, and that judge's familiarity

7    with the conduct of APPELLANTS and APPELLEES relating to that case.

8          Accordingly, since APPELLANTS instituted a suit against APPELLEES for mishandling of the

9    estate plan, "[t]he provisions for mandatory abstention do not apply and on these facts discretionary

10   abstention would be likely to result in an inappropriate waste of judicial resources."  *Matter of Stockert*

11   *Flying Service, Inc.*, 74 Bankr. at 708.

12   **C.     The Bankruptcy Court Properly Dismissed APPELLANTS' Meritless Malpractice**
         **Complaint**
13

14       **1.     Standard for Motion to Dismiss.**

15       Federal Rules of Civil Procedure, Rule 12(b), states in part:

16           Every defense, in law or fact, to a claim for relief in any pleading,
             whether a claim, counterclaim, cross-claim, or third-party claim, shall be
17           asserted in the responsive pleading thereto if one is required, except that
             the following defenses may at the option of the pleader be made by
18           motion:…(6) failure to state a claim upon which relief can be
             granted…If, on a motion asserting the defense numbered (6) to dismiss
19           for failure of the pleading to state a claim upon which relief can be
             granted, matters outside the pleading are presented to and not excluded
20           by the court, the motion shall be treated as one for summary judgment
             and disposed of as provided in Rule 56, and all parties shall be given
21           reasonable opportunity to present all material made pertinent to such a
             motion by Rule 56.

22       Rule 12(b)(6) motions test the legal sufficiency of the claims stated in a complaint.  Dismissal

23   is appropriate under Rule 12(b)(6) when a plaintiff's allegations fail to state a claim upon which relief

24   can be granted. Fed.R.Civ.P. 12(b)(6); see also *Grier v. Brown* 230 F.Supp.2d 1108, 1110 (N.D. Cal.

25   2002).  Dismissal is proper where there is either a "lack of cognizable legal theory" or "the absence of

26   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Department*, 901

27   F.2d 696, 699 (9th Cir.1990).   Likewise, a motion to dismiss is properly granted, even where a

28   cognizable claim is stated, if the claim is nevertheless clearly barred by some other defense, such as

- 16 -

1   lack of standing, preemption, statute of limitations, immunity, and the like.   *See* W. Schwarzer,

2   California Practice Guide: Federal Civil Procedure Before Trial § 9:193, et seq. at pp. 9-47 (Rev.

3   2002).   Notably, the district court's discretion to deny leave to amend is particularly broad where

4   plaintiff, as here, has previously amended the complaint.   *Ascon Properties, Inc. v. Mobil Oil Co.* 866

5   F.2d 1149, 1160 (9th Cir. 1989), citing, *DCD Programs, Ltd. v. Leighton* 833 F.2d 183, 186, n. 3 (9th

6   Cir. 1981); *Mir v. Fosburg*, 646 F.2d 342, 347 (9th Cir. 1980).

7          Additionally, in deciding whether a case should be dismissed may generally only consider the

8   complaint and any attached exhibits that have been incorporated therein.   *Grier*, 230 F.Supp.2d at

9   1110.   However, a court may consider a document external to the complaint if the complaint

10   necessarily relies on the document and no party contests the document's authenticity.   *Id.*; see also

11   *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled in part on other grounds.   A matter that

12   is properly the subject of judicial notice may be considered along with the complaint when deciding a

13   motion to dismiss for failure to state a claim. See *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504

14   (9th Cir. 1986).

15          **2.      APPELLANTS Lacked Standing To Pursue A Claim Against APPELLEES
                     Because APPELLANTS, In Their Individual Capacities, Did Not Have An**
16          **Attorney-Client Relationship With APPELLEES.**

17          In order to state a claim for legal malpractice, APPELLANTS must prove that there was an

18   attorney-client relationship between them in their individual capacities and APPELLEES.   See

19   generally *Azanor v. Ashcroft*, 364 F.3d 1013, 1023 (9th Cir. 2004).   APPELLANTS, however, have

20   failed to establish or even allege that APPELLEES represented them individually pre or post filing of

21   the bankruptcy petition.   On the contrary, the Unsecured Creditors' Committee itself represents the

22   members of the class and the professionals follow the instructions of the Committee.   The bankruptcy

23   court appointed APPELLEES to represent the Unsecured Creditors' Committee, which consisted of

24   APPELLANTS *and* two other individuals *and* one business entity that are not parties to the

25   malpractice action.   APPELLEES did not represent any individual creditor's interest in the case

26   because they were appointed to represent the entire unsecured creditor class.   APPELLEES should not

27   be placed in a position where they are expected or encouraged to second guess the committee as to

28   how best to further the interests of the Committee's constituency.   *See* 7 Collier on Bankruptcy

- 17 -

¶ 1103.03 (15th ed. rev. 1996). Therefore, APPELLEES do not owe a duty to APPELLANTS, individually, to maximize their interests at the expense of the remaining creditors in the represented class. In fact, the Bankruptcy Code now specifically provides that counsel to a creditors' committee may not, while employed by the committee, represent any other entity in connection with the case. 11 U.S.C. § 1103(b). Thus, APPELLEES could not possibly have entered into an attorney-client relationship with APPELLANTS while they were assisting in the administration of the bankruptcy plan. To impose any sort of fiduciary responsibility with respect to individual creditors on APPELLEES to the committee would inevitably open APPELLEES to widespread attack by creditors who are merely dissatisfied with the results of distribution.

In fact, the Bankruptcy Court picked up on this very fact:

> The court begins its analysis by noting that [APPELLEES were] not [APPELLANTS'] lawyer. A professional retained by a committee represents the committee and only the committee, and the professional's fiduciary duty runs solely to the committee. [internal quotations and citations omitted.] *See* Memorandum on Motion to Dismiss at pg. 2:8-11, Doc. #23.

Accordingly, the law is clear that any and all claims against APPELLEES arising out of services rendered in the Debtor's Chapter 11 case belong to the Unsecured Creditors' Committee as a whole and not APPELLANTS individually. *In re D.H. Overmeyer Telecasting Co., Inc.*, 47 B.R. 823 (Bktcy. Ohio 1985); *In re J.F.D. Enterprises, Inc.*, 223 B.R. 610 (Bktcy.D.Mass. 1998). Counsel for the committee has no duty to maximize any individual creditor's interest. See *Matter of Levy* (Bktcy. N.Y. 1985) 54 B.R. 805. Since the Committee no longer exists, any claim would be that of the bankruptcy estate.[2] Further, all claims that belonged to the Committee now belong to the estate. The confirmed Plan expressly provided that the assets of the estate revest in the Debtor on the Effective Date of the Plan, which occurred once the Debtor entered into the Subordination Agreement. The case

---

[2] Notably, at the time of the notice of removal, the Chapter 11 case was reopened and, thus, the Bankruptcy Court that appointed APPELLEES was best position to determine if the Unsecured Creditors' Committee had been damaged. Accordingly, the fact that any legal malpractice claims belonged to the Committee as a whole, and not individually to APPELLANTS, is another reason this is a core proceeding; the legal malpractice claims are a core proceeding because the case concerns "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate." 28 U.S.C. § 157(b)(2)(A) and (O).

RESPONDENTS DAVID N. CHANDLER, SR.,
DAVID N. CHANDLER, P.C.'S OPENING BRIEF

Case No.: 05-12180
A.P. No.: 11-1118

1   was subsequently closed by Order of the Court and the Committee ceased to exist.   Since the

2   Committee no longer exists, any and all claims belong to the bankruptcy estate.

3         **3.      APPELLANTS' Claims Are Barred By Issue Preclusion.**

4         The Application for Compensation by APPELLEES as counsel for the Committee was

5   approved by Order of this Court on December 7, 2006.  The implicit finding during those proceedings

6   as to the reasonableness of the compensation allowed is preclusive as to any issue decided after a full

7   and fair opportunity for litigation.  *In re Iannochino*, 242 F. 3d 36 (1st Cir. 2001); *v.  Englander*,  321

8   F.3d 467 (4th Cir. 2003); *In re Paige*, 610 F.3d 865 (5th Cir. 2010).  In particular, each of the

9   APPELLANTS received notice of hearing on the Application for Compensation as well as a copy of

10   the Application filed by APPELLEES.  APPELLANTS could have raised the alleged malpractice issue

11   with respect to Michael Fallon's Application for Compensation or that of the APPELLEES, but failed

12   to do so.  The Court's allowance of the compensation is determinative and preclusive as to any issues

13   regarding the duty and/or breach of duty to APPELLANTS, or the Committee for that matter, as a

14   matter of law.  See *Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*, 574 F.Supp.3d 143,

15   149 (D.D.C. 2008).

16         **4.      APPELLEES Owed No Duty To Act With Respect To Implementation Of The
                    Plan Absent Terms Of The Plan, Which Expressly Provides Otherwise.**
17

18         The duties and authority of the Committee are set forth in 11 U.S.C. § 1104 and 11 U.S.C.

19   § 1103.   Bankruptcy Code § 1103(c) grants broad authority to the Committee with respect to

20   formulating a plan for reorganization.  Implied in the grant of authority is a fiduciary duty to the

21   Committee's constituents.  *In re Mesta Mach. Co.*, 67 B.R. 151, 156 (Bktch.W.D.Pa. 1986).  Counsel

22   and the committee have obligations of fidelity which extend to the interests of the creditor class they

23   represent but not to the individual members.  *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R.

24   717, 722 (Bktcy. S.D.N.Y.1992).

25         Here, APPELLEES did not owe APPELLANTS a duty to implement the terms of the Plan.

26   Specifically, the terms of the confirmed Plan required the closing of a sale of revested assets held by

27   the Debtor through an escrow at Fidelity Title or such other escrow as the Buyer and Seller agreed.

28   The Plan terms provided that the Buyer would deliver its promissory note, Deed of Trust, security

- 19 -

agreement and financing statement to the Debtor through escrow at Fidelity Title Company, Petaluma. *See* Doc. # 12 at prgh. 6. The Buyer, Seller, and Debtor elected to close that escrow through their respective attorneys' offices and exchanged the fully executed documents for recordation and filing through those attorneys. Although the original financing statement was never provided to APPELLEES nor were the APPELLEES provided a copy thereof, Debtors' attorney, Mr. Fallon, represented to APPELLEES that the financing statement had been sent for filing and the Deed of Trust sent for recording by Mr. Fallon. *See* Id. at prgh. 8. Presumably, Mr. Fallon had in his possession the authenticated security agreement and had authority to cause the financing statement to be filed. Regardless, APPELLEES neither had the materials nor authority to file them.

Additionally, a UCC-1 financing statement is only effective to the extent that it was filed by a person that is permitted to file it under California Commercial Code § 9510. A person is authorized to file a financing statement by the underlying debtor's execution of a security agreement, by becoming bound to the security agreement, or by acquiring collateral covered by the security agreement. See Commercial Code § 9509(b). Neither APPELLANTS, the Committee, nor APPELLEES were authorized to file the Financing Statement on behalf of the Debtor. APPELLEES did not prepare or have a copy of the authenticated agreement. Thus, there were no means by which APPELLEES could ascertain whether the security agreement had been delivered and that the filing was authorized. It was not APPELLEES' duty to file the authenticated agreement or to insure that the authorized party, the Debtor, did, in fact, cause the document to be filed. Mr. Fallon had the duty to file and record the documents under the escrow arrangement which he and Buyer's counsel assumed. *See* California Commercial Code § 9625(b) and (e)(1) [wrongful filing of a financing statement subjects such filing party to damages].

Moreover, assuming *arguendo* the Committee still existed at the time the Plan was to be implemented, neither it nor APPELLEES had any rights reserved to dictate the escrow holder, to prepare or comment on escrow instructions, or to file or record documents on behalf of the Debtor, even in an effort to perfect security interests as provided in the confirmed Plan. The Committee's only retained function was to act in the event of the Liquidating Agent's failure to act on the specifically enumerated reserved claims, which did not occur because the Liquidating Agent pursued the retained

RESPONDENTS DAVID N. CHANDLER, SR.,
DAVID N. CHANDLER, P.C.'S OPENING BRIEF

Case No.: 05-12180
A.P. No.: 11-1118

claim against Muna Cerini that was compromised by Order of the Court on March 13, 2007. *See* Id. at prgh. 10.  Accordingly, neither the Committee nor APPELLEES had authority nor a duty to insure filing of the authenticated agreement was effectuated.  The Bankruptcy Court's dismissal should, therefore, be upheld.

### 5.   APPELLEES Are Protected From APPELLANTS' Legal Malpractice Allegations By The Doctrine Of Quasi-Judicial Immunity.

Where the lawsuit is brought against defendants who have statutory or common law immunities (e.g., governmental officers and entities), motions to dismiss are often based on the allegations contained in the complaint.  *Leveto v. Lapina*, 258 F.3d 156, 161 (3rd Cir. 2001); *McKenna v. Wright*, 386 F.3d 432, 436 (2nd Cir. 2004); see also *United States v. Gaubert*, 499 U.S. 315, 324–325, 111 S.Ct. 1267, 1274–1275 (1991).

The doctrine of "quasi-judicial immunity" extends absolute judicial immunity to persons who, though not judges, are acting in a judicial or "quasi-judicial" capacity.  The focus is on the nature of the duty performed and its nexus to the judicial process; i.e., whether the work was functionally comparable to that of a judge — acts of an adjudicatory or decision-making nature.  *Regan v. Price*, 131 Cal.App.4th 1491, 1495 (2005) [immunity extends to court-appointed discovery referee]; *Howard v. Drapkin*, 222 Cal.App.3d 843, 853–854 (1990); see *Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452, 1454–1455 (9th Cir. 1993) [immunity extends to federal court special master performing adjudicatory functions].

Nonjudicial officers enjoy quasi-judicial immunity to the extent they perform "judicial functions," which include official court tasks involving the exercise of discretionary judgment.  *Antoine v. Byers & Anderson, Inc.*, 508 US 429, 435–437 (1993); *In re Castillo*, 297 F.3d 940, 948–949 (9th Cir. 2002); *In re Cedar Funding, Inc.*, 419 BR 807, 822 (9th Cir. BAP 2009).  The implicit immunity extends to conduct within the authority conferred to the creditors committee by statute or by the Court.  *In re Lighthouse Lodge, LLC*, 2010 WL 4053984 (Bktcy.N.D.Cal.2010).  The qualified immunity corresponds to and is intended to further the committee's statutory duties and powers.  *Pan Am Corp. v. Delta Air Lines, Inc.*, 175 B.R. 438 (Bktcy. S.D.N.Y. 1994).  The implicit immunity has been recognized to be analogous to that of a bankruptcy trustee to the extent that a committee acts

1    within its statutory authority.  To overcome the immunity, the party alleging breach of the duty must

2    prove willful misconduct or *ultra vires* activity.

3           The federal courts have held that immunity applies to such court-appointed persons as a trust

4    officer employed by the Oregon Department of Veterans Affairs which was acting (by court

5    appointment) as the conservator of plaintiff's estranged husband (*Mosher v. Saalfeld*, 589 F.2d 438,

6    442 (9th Cir.1978), cert. den. 442 U.S. 941 (1979)); a receiver appointed by a court to manage property

7    of a marital estate during a dissolution of the marriage (*New Alaska Development Corp. v. Guetschow*,

8    869 F.2d 1298, 1302–1303 (9th Cir.1989)); a child protective services worker acting pursuant to a

9    court order to take a child into custody (*Coverdell v. Dept. of Social & Health Services*, 834 F.2d 758,

10   764–765 (9th Cir.1987)); and guardians ad litem, psychologists and appointed Appellees for children

11   in child abuse actions (*Myers v. Morris*, 810 F.2d 1437, 1465–1468 (8th Cir.1987), cert. den. 484 U.S.

12   828). Essentially, the federal courts have applied quasi-judicial immunity to people connected with the

13   judicial process who are not "public officials," arbitrators or referees, such as (1) mediators, guardians

14   ad litem, therapists, receivers, bankruptcy trustees and other persons appointed by the courts for their

15   expertise and (2) persons whose work product comes into the judicial process to be used by the court

16   even though they were not court-appointed, such as social workers and probation department

17   employees. *Ibid.*

18          In *Howard*, the court held that a court-appointed psychologist involved in a custodial dispute

19   should be afforded quasi-judicial immunity, after determining that the rationale underlying federal

20   extension of immunity to mediators, guardians ad litem, therapists, receivers, bankruptcy trustees and

21   lawyers appointed by the courts for their expertise applies with equal force to California courts.

22   *Howard, supra,* 222 Cal.App.3d at 855.  The California Court of Appeals determined that "guardians

23   ad litem, psychologists and <u>attorneys</u> for children in child abuse actions" are included in the category

24   of those who "fulfill quasi-judicial functions such that they are entitled to quasi-judicial immunity."

25   *Id.* at 856 (emphasis added).  In determining quasi-judicial immunity, the court analyzed the functions

26   being performed by the person seeking immunity and his or her connection to the judicial process. *Id.*

27   at 855.

28          In *Howard*, the court appointed psychologist, Drapkin, was hired jointly by the mother and

RESPONDENTS DAVID N. CHANDLER, SR.,
DAVID N. CHANDLER, P.C.'S OPENING BRIEF

Case No.: 05-12180
A.P. No.: 11-1118

father. Drapkin's task was to perform a family evaluation of the father and the subject of the dispute, a nine year-old child. The purpose of the evaluation was to determine whether the child was physically, sexually and/or emotionally abused by the father. Ultimately, Drapkin prepared an evaluation which the mother disagreed with. Among other things, the mother's allegations against Drapkin were that Drapkin was abusive, negligently prepared a report which included false statements and omitted information, and that she also failed to disclose certain conflicts of interest. *Id.* at 855.

The trial court sustained a demurrer to the mother's complaint against Drapkin. On appeal, the appellate court concluded that Drapkin was entitled to quasi-judicial immunity. The court stated that in determining whether quasi-judicial immunity can be extended to court appointed and non-court appointed individuals, the focus should be placed on whether the individual is an advocate or a nonadvocate. *Id.*, at 859. The court went on to hold:

> We therefore hold that absolute quasi-judicial immunity is properly extended to these neutral third parties for their conduct in performing dispute resolution services which are connected to the judicial process and involve either (1) the making of binding decisions, (2) the making of findings or recommendations to the court or (3) the arbitration, mediation, conciliation, evaluation or other similar resolution of pending disputes. *Id.*, at 860.

In its analysis, the court discussed several policy considerations, including attracting independent expertise to serve the judicial system without fear of damage claims as a result of the performance of their duties. *Id.* at 857. The court concluded by adopting the rationale of the federal courts to promote uninhibited and independent decision making in extending quasi-judicial immunity to "non-judicial persons who fulfill functions intimately related to the judicial process." *Id.* at 857.

Here, the above analysis in *Howard* applies to immunize APPELLEES, based on the quasi-judicial functions they performed, and their intimate connection to the judicial process. Specifically, the Court in the Debtor's Chapter 11 case was required to assist in preparing a written plan of reorganization, through which the Debtor could restructure its obligations to the Committee and attempt to pay those obligations over time. In its efforts to perform this function, the Court exercised its authority to seek the assistance of counsel by appointing APPELLEES as counsel for the Committee. Clearly, encompassed within APPELLEES' delegated functions was the authority to negotiate the terms under which the reorganized debtor would pay off its debts to the Committee and

- 23 -

1  consult with the Debtor concerning administration of the case.  These functions are quasi-judicial in

2  nature and intimately connected to the judicial process.  Therefore, the quasi-judicial immunity which

3  is accorded persons acting as an integral part of the judicial process protects APPELLEES from having

4  to litigate claims arising from legal services provided in representing the Committee in the Debtor's

5  Chapter 11 case.

6       **6.       APPELLANTS Suffered No Loss Or Damage.**

7       The Debtor's personal property was transferred to the Buyer subject to existing leases (liens)

8  for which the buyer was given credit against the purchase price.  The existing liens on personal

9  property in the approximate amount of $920,000, were assumed by the Buyer.  *See* Doc. #12 at

10  prgh. 2h.  There was, and would likely never be, any equity in the property transferred by Bill of Sale

11  to the Buyer under the confirmed Plan.  The Debtor further subordinated the security interest provided

12  in the Plan to a new $10 million (or, $3.4 million) loan secured by a Deed of Trust and Security

13  Agreement by execution of a Subordination Agreement which was not provided in the terms of the

14  confirmed Plan.

15       The new Deed of Trust was a first priority Deed of Trust on a leasehold interest in an industrial

16  park.  The arrearage on the lease payments was cured from the cash payment made by Buyer at close

17  of escrow.  The assets of the estate revested in the Debtor at confirmation of the Plan.  *Id*.  Debtor

18  executed a subordination of the lien of the Deed of Trust on the leasehold to at least $3.4 million lien

19  in favor of AgCredit.  The Liquidating Trustee refused to execute the Subordination Agreement.  The

20  Buyer ultimately became yet another victim of the recession and has had a difficult time meeting its

21  obligations under the terms of the Purchase Agreement.  There is a remained approximate $1 million

22  balance due Debtor, which was reduced to approximately $100,000 through settlement negotiations.

23       APPELLANTS allege that their individual claims were to have been secured despite the fact

24  that the Plan revested the note in the Debtor along with the security interest in the former assets of the

25  estate.  It is the Debtor's responsibility to enforce the note.  The former Committee has no such

26  authority nor do its former members.  The Security Agreement executed by the Debtor and the Buyer,

27  provides at paragraph 15 for subordination of the lien against the revested assets to $10 million in New

28  Senior Financing.  The Subordination Agreement recorded September 27, 2007, further reduces the

-24-

1 │ value of the security interest held by the Debtor and the unsecured creditors' interest therein.

2 │      Debtor, after confirmation and close of the escrow, but prior to default by the Buyer, entered

3 │ into a Subordination Agreement with SVFC and subordinated the purchase money security interests in

4 │ both real and personal property to New Senior Financing in the form of a $10 Million loan (or

5 │ $3.4 million).  The subordination was agreed to by the Committee to be a Plan term, but such plan term

6 │ was not included in the Plan or in the Confirmation Order.  Any loss suffered by APPELLANTS is no

7 │ different than other claims in the same unsecured class.  The diminution or total loss of value is

8 │ directly attributable to the Subordination Agreement executed by the Debtor, not APPELLEES'

9 │ allegedly negligent legal services.

10 │ **VI.  CONCLUSION**

11 │      Based on the foregoing, it is respectfully requested that the Bankruptcy Court's removal of the

12 │ malpractice action and subsequent dismissal of the complaint be upheld.

13 │

14 │ Dated: November 29, 2011

15 │     MURPHY, PEARSON, BRADLEY & FEENEY

16 │

17 │     By _____

       James A. Murphy

18 │        Arthur J. Harris
       Appellees for Plaintiffs
       DAVID N. CHANDLER AND DAVID N.

19 │        CHANDLER, P.C.

20 │

21 │ AJH.20328125.doc

22 │

23 │

24 │

25 │

26 │

27 │

28 │

- 25 -